## SULLIVAN *v.* SULLIVAN.

### (*Nashville.* February 18th, 1888.)

1. TRUSTS. *Resulting trusts. Quantum of proof required to raise.*

It is well settled that the facts relied upon to establish a resulting trust must be proved with great clearness and certainty.

2. SAME. *Same. Must arise eo instanti with passing of title.*

A resulting trust cannot be created by an oral agreement or payment of money made before or after the title passes, unless the facts existent at that instant are such as will raise the trust. Prior and subsequent facts may, however, explain the transaction, and for that purpose should be looked to.

Case cited and approved: Wells *v.* Stratton, 1 Tenn. Ch., 328.

3. SAME. *Same. Sufficiency of evidence.*

Although there may be no *direct* proof, yet there is sufficient evidence to raise and establish a resulting trust in favor of the mortgageor where it appears that a mortgagee, who purchased the mortgaged premises at a foreclosure sale, suffered the mortgageor to remain in

possession and control of the land for several years, claiming and dealing with it as his own, having it assessed to himself for taxation and paying the taxes, and where the mortgagee frequently admitted the payment of his debt in full after the sale, and obtained the Clerk and Master's deed and transferred it, by written indorsement, to the mortgageor's wife.

FROM MONTGOMERY.

Appeal from the Chancery Court of Montgomery County.   GEO. E. SEAY, Ch.

Bill to clear up title to land.   Decree for complainants.   Defendants appealed.

QUARLES & DANIEL for Complainants.

LEACH & SAVAGE for Defendants.

BAXTER SMITH, Sp. J.   Complainants filed this bill in the Chancery Court of Montgomery County on February 25th, 1884, alleging that, prior to the year 1874, Complainant Patrick Sullivan was the owner of considerable real and personal property in the city of Clarksville, and that in the month of February, 1874, he executed a mortgage to one John Sullivan to secure an indebtedness of $650, which mortgage was afterward transferred to M. Sullivan; and that he, on the 9th of February, 1874, executed a mortgage on all of his property to secure an indebtedness of $2,700 to said M.

Sullivan, the father of the defendants; that some time subsequent to the execution of these mortgages certain creditors of Complainant Patrick Sullivan filed their bill seeking to have said mortgages set aside as fraudulent, or to be foreclosed and they receive the excess, if any, of what the property might sell for if the mortgages were held valid; that said bill was filed November 27th, 1876, resulting in a decree at the July Term, 1877, of the Court, holding said mortgages valid and ordering a sale of all the property as prayed, which was sold October 6th, 1877, and sale confirmed July, 1878, the realty selling for $1,760 and the personalty for $——, all of which was purchased by M. Sullivan, which fell short of satisfying his mortgages.

Complainants further allege in their bill that on the day of sale it was agreed by Complainant Patrick Sullivan and M. Sullivan that the latter should purchase the property and that the former should take and retain the possession of it; and when said M. Sullivan should be paid his money, he would re-convey the property as Complainant Pat. Sullivan should direct.

The defendants are the minor children of M. Sullivan, who, the record discloses, died in 1881, and they appear and defend by guardian *ad litem.* They deny all the material allegations in the bill, and particularly deny that M. Sullivan agreed with complainants that he would purchase the property at the sale by the Clerk and Master and allow

complainants to take and retain possession of it,
and, when he should be paid his money, he, M.
Sullivan, would re-convey the property as Com-
plainant Pat. Sullivan should direct. Defendants
deny the genuineness of the alleged indorsement
by M. Sullivan on the back of the deed from the
Clerk and Master.

The evidence is voluminous. Upon consideration
of the whole case, the Chancellor granted the re-
lief prayed for in the bill. The defendants have
assigned errors raising all the material questions
made in the pleadings.

We are met at the threshold by the question
as to whether the indorsement on the back of the
deed of the Clerk and Master to M. Sullivan of
November 26th, 1879, is genuine. This indorse-
ment purports to have been witnessed by one John
Sullivan, a brother of M. Sullivan, and who had
lived for a time in his house. He was called as
a witness, and proved positively that the indorse-
ment in question was written by M. Sullivan at
the date it purports to have been, and signed by
M. Sullivan, and that he witnessed it at the re-
quest of M. Sullivan, and that the latter then de-
livered the deed, so indorsed, to Pat. Sullivan, with
directions for him to take it home to his wife.

An attempt was made by defendants to discredit
the testimony of this witness by showing that he
was a man of very intemperate habits. Defend-
ants also introduced witnesses who were acquainted
with the handwriting of M. Sullivan, and who

were of opinion that his signature to the indorsement was not genuine; and, on the other hand, complainants introduced witnesses acquainted with the handwriting of M. Sullivan, who testified to the genuineness of said indorsement. Without discussing the testimony, we are content to announce the conclusion arrived at by the Court on this question in the case, and that is that the weight of proof is that the indorsement was genuine. This conclusion is strengthened by the fact that the deed containing the indorsement is in the possession of the complainants, and the frequent declarations of M. Sullivan, made subsequent to the date of the indorsement, that he had given to complainants this deed in consideration of the settlement ' of all matters between them, and had directed Pat. Sullivan to give it to his wife, Honora.

But by far the more serious question arises as to whether the complainants have sustained by proof the allegations made in the bill, viz.: That on the day of the sale of the property in question, by the Clerk and Master, it was agreed by Complainant Pat. Sullivan that M. Sullivan should buy the property; that Pat. Sullivan should take and retain the possession of it, and when Mike Sullivan should be paid his money he would reconvey the property as Pat. Sullivan should direct. The ' record does not contain any express proof of such an agreement.

It is well settled, as contended by counsel for

defendants, that no oral agreement, and no payment before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself. Perry on Trusts, Sec. 133. Also that the facts, in all cases of resulting trusts, must be proved with great clearness and certainty. *Ibid.*, Sec. 137; *Wells* v. *Stratton*, 1 Tenn. Ch. Rep., p. 328. The last authority cited further holds that complainants seeking to set up a resulting trust have the right to show facts and circumstances sufficient to satisfy the Court that the agreement was made before the title passed. Then, can the Court say that the proposition has been proved by the facts and circumstances so strongly shown in this record? The record discloses that M. Sullivan, between the date of the sale of the property and his death, repeatedly stated that Complainant Pat. Sullivan had settled his entire indebtedness to him; and to some he said that, if there was any difference between them, he was indebted to Pat. Sullivan. And to more than one person to whom he stated this, he also said that he had given Pat. Sullivan a deed from the Chancery Court to the property for him to give to his wife, Honora. The fact is proven that the complainants continued in possession of the property after the sale by the Clerk and Master in October, 1877, and that they, or rather Complainant Pat. Sullivan, claimed ownership of it openly and notoriously, and that the taxes upon it were

assessed in his name and paid by him; also that he used and disposed of some of the property as his own, with the unmistakable knowledge and consent of M. Sullivan, and that the latter spoke of the property and treated it as Pat. Sullivan's property.

These facts lead the Court to the conclusion that there was an agreement between him and complainants at the time of the chancery sale that he (M. Sullivan) was to purchase the property in his name, and hold it till the indebtedness from Pat. Sullivan to him was paid, and then he was to re-convey to Pat. Sullivan, or to whom he should direct. It is also clear from the proof that it was the intention of M. Sullivan, when he made the indorsement on the back of the Clerk and Master's deed within a few days after its execution and before it was registered, to convey his entire interest in the property embraced in the deed to the Complainant Honora, and that the parties to it all regarded that all had been done that was necessary to perfect such conveyance; and while it is equally clear that such attempted conveyance could not legally have such effect, it serves very strongly to show what was the agreement of the parties at the time of the sale.

The result is that the decree of the Chancellor is in all respects affirmed.