FERGUSON *v.* BOOTH.

FERGUSON *v.* FERGUSON.

(*Knoxville.* September Term, 1913.)

1. **EVIDENCE.** Documentary evidence. Recitals in deeds. Effect.

Particular recitals in a deed are conclusive evidence of the facts recited, in actions in which the purpose of the deed is directly involved. (*Post, p.* 265.)

Cases cited and approved: George v. Bischoff, 68 Ill., 236; Usina v. Wilder, 58 Ga., 178; Mix v. People, 86 Ill., 329.

2. **EVIDENCE,** Documentary evidence. Recitals in deeds. Effect. Collateral issue.

In ejectment between the heirs of a wife who conveyed property to her husband and the husband's grantees, the deed from the wife is collateral to the purpose of the action, and the recitals therein are only prima facie evidence of the facts recited, but they are evidence and receivable as such against all those claiming under the deed. (*Post, pp.* 265, 266.)

3. **EVIDENCE.** Documentary evidence. Recitals in deeds. Weight as evidence.

Where the recitals in a deed which is collateral to the purpose of the action are particular and definite and are corroborated by the substantial evidence of the parties and are not contradicted by anything in the record, they may be accepted as true. (*Post, p.* 265.)

4. **TRUSTS.** Resulting trust. Relationship between parties.

The general rule that, where one buys land in the name of another and pays the consideration therefor, the land will be held in trust for the person paying the consideration does not apply where a parent purchases land in the name of his child or a

husband in the name of his wife, in which case an advancement or gift will be presumed from the relationship. (*Post*, *p.* 269.)

Cases cited and approved: Whitten v. Whitten, 3 Cush. (Mass.), 191; Kimbrough v. Kimbrough, 99 Ga., 134; Barnum v. Le Master, 110 Tenn., 640.

5. **HUSBAND AND WIFE.** Wife's separate estate. Conveyance to wife. Husband's request.

The rule that, where a stranger makes a conveyance to a wife, there must be apt words used to create a separate estate in the wife does not apply where the husband pays the consideration for the property and directs the conveyance to be made to the wife, in which case the rule is the same as if the conveyance were directly from the husband and the wife takes a separate estate which she may convey to her husband under Shannon's Code, sec. 4246. (*Post*, *p.* —.)

Code cited and construed: Sec. 4246 (S.).

Cases cited and approved: Barnum v. Le Master, 110 Tenn., 640; Vick v. Gower, 92 Tenn., 391.

---

FROM KNOX.

---

Appeal from Chancery Court, Knox County.—WILL D. WRIGHT, Chancellor.

NOBLE SMITHSON, for W. P. Ferguson.

GEO. FOX, for Eliza Ferguson.

LEWIS TILLMAN, for Wm. H. Booth.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

These two cases are actions of ejectment brought to recover lots 306 and 316 in Shields' addition of Lonsdale. Complainant and defendants deraign title back to John H. Shields as the common source. The complainant's title is as follows:

Rufus and Margaret Elizabeth Ferguson were married January 15, 1854. The complainant, W. P. Ferguson, and a daughter were born of that marriage prior to January 6, 1862. John H. Shields, A. G. Jackson, and J. C. Mitchell conveyed the land in controversy to Margaret E. Ferguson, wife of Rufus, on January 6, 1862, by deed containing covenants of general warranty, and in the usual form of deeds, without any words indicating a separate or other special estate in Elizabeth.

The complainants are the heirs at law of W. P. Ferguson. Defendants deraign their title thus: On August 20, 1862, Elizabeth executed a deed to her husband conveying the lands to him and acknowledging it before the clerk of the county court with proper privy examination. In 1864 Rufus Ferguson divorced Elizabeth, and the decree of divorce makes no reference to the interest of either Elizabeth or Rufus in the lands in controversy and does not attempt to affect the rights of the parties thereto. Rufus Ferguson remarried November 25, 1866. In September, 1888, Rufus and his then wife, Eliza, conveyed the northern

half of the lots in controversy to Ida Ross, and the defendant Booth claims under this conveyance by a chain of title to which no exception is taken as to its sufficiency.

Elizabeth Ferguson died ten or fifteen years before the suit was brought and Rufus died in 1910. It is made to appear by instruments of writing filed in the record that John H. Shields entered into a written agreement with J. C. Mitchell February 25, 1859, by which Shields sold to Mitchell the two lots in controversy for the consideration of $600 to be paid by Mitchell and his son in labor to be rendered Shields at the rate of $1 per day each. Prior to this agreement with Mitchell, and on August 13, 1858, Shields sold lot No. 258 of the same subdivision of Lonsdale, and situated near to the lots in controversy, to Rufus Ferguson at the price of $275. This agreement also provided that Ferguson was to pay for his lot in labor at $1 per day. Ferguson and Mitchell had one and two years in which to pay for their lots. On May 30, 1859, Shields assigned the two contracts with Mitchell and Ferguson to A. G. Jackson with the consent of both Mitchell and Ferguson. On January 6, 1862, Shields, Jackson, and Mitchell executed the deed to Elizabeth Ferguson heretofore referred to, which, after reciting the agreement between Mitchell and Shields for the purchase by Mitchell of lots 306 and 316 and the assignment by Shields of his interest in the agreement to Jackson, contains the following:

"Also that by the mutual agreement, and the acts of said Mitchell, Shields and Jackson the nature of the original agreement was changed subsequent to the date of the said assignment and in accordance with the terms and conditions of the change the said Mitchell executed to the said Jackson his promissory note for one hundred dollars, the payment of which note with interest by the said Mitchell having been agreed upon by all concerned, as the conditions upon which the said Shields and Jackson should relinquish all claim possessed by them in and to said lots three hundred and six and three hundred and sixteen now this indenture further witnesseth that the said Mitchell has paid or caused to be paid the promissory note together with all accrued interest; also the said J. C. Mitchell transfers for a valuable consideration all the right, title and claim and demand in him vested in and to the said lots 306 and 316 to Mrs. Elizabeth Ferguson, her heirs and assigns and will warrant and forever defend the title of said lots against the claims of all persons."

The necessary effect in law of this deed was to vest in Elizabeth Ferguson both the legal and equitable title to the lots in controversy, because the deed was signed by Shields, who held the legal title, and Jackson and Mitchell, who held the equitable title. On August 20, 1862, Elizabeth Ferguson conveyed the two lots to her husband by signing and privily acknowledging the following instrument:

"Whereas on the 6th day of January, 1862, John H. Shields and J. C. Mitchell executed to me, Elizabeth

Ferguson, a deed of conveyance for two certain lots, land therein described which deed is registered in Deed Book page 379 of the register's office of Knox county, and whereas it is agreed and desired by Rufus Ferguson, my husband and myself, that the title to said lots shall be vested in him, the said Rufus Ferguson:

"Now therefore, for the purpose of effecting the object aforesaid, I, the said Elizabeth Ferguson, do hereby transfer and assign and set over to my husband, the said Rufus Ferguson, the title of the lots described in said conveyance to myself; it being the intention of this instrument that the title of said lots shall vest in the said Rufus Ferguson in the same manner and to the same extent as if the conveyance had been made to him instead of me.

"For particular description of said lots reference is hereby made to the conveyance aforesaid to me.

"And I hereby acknowledge and agree that my said husband paid the consideration money for said lots, although the conveyance was made to me."

All of the foregoing instruments referred to in this statement of fact have been of record in Knox county for more than twenty years and more than thirty years before the filing of the bill in this case.

The facts recited in the deed to Elizabeth make it clear that Mitchell made a new arrangement with Jackson by and with the consent of Shields by which Mitchell was to pay for lots 306 and 316 the sum of $100, to be evidenced by his promissory note, instead of 600

days' labor at the price of $1 per day. It also makes it plain that this note has been "paid or caused to be paid" by Mitchell, and that Shields and Jackson were satisfied with the payment. Mitchell, Jackson, and Shields are strangers in blood to Elizabeth Ferguson. No reason appears from this instrument why such strangers would convey valuable property to the wife of another, unless the reason can be inferred from the statement that Mitchell had "caused the note executed to Jackson to be paid." This probably would be insufficient without more, but the deed of Elizabeth Ferguson to Rufus contains an express acknowledgment that Rufus paid the consideration money, although the conveyance was made to her.

If the recitals in the foregoing instruments are competent evidence against the complainants, they establish as a fact that Rufus Ferguson paid the consideration price and had the deed executed to his wife. Recitals are introduced into deeds for the purpose of explaining why the deed is executed or of showing circumstances to preserve the connection in the chain of title. Such recitals are usually treated of as two kinds, particular and general. Particular recitals are conclusive evidence of the facts recited in actions in which the purpose of the deed is directly involved. *George* v. *Bischoff,* 68 Ill., 236; *Usina* v. *Wilder,* 58 Ga., 178; *Mix* v. *People,* 86 Ill., 329. But, if the deed is merely collateral to the purposes of the action, recitals contained in it are only *prima facie* evidence of the facts recited. They are evidence, however, and

are receivable as such against the grantor and the grantee in the deed and all those claiming under them. Devlin on Deeds, vol. 2, sec. 992, *et seq.* The deeds from which the facts above stated are extracted are collateral merely to the purposes of this suit, and the recitals contained in them are only *prima facie* evidence of the facts stated, but there is nothing in the record indicating their falsity, so that we feel reasonably certain that they are true. They are particular and definite and are corroborated by the subsequent conduct of the parties. Therefore we have a case of the husband paying the consideration price for the land and directing the deed to be made to the wife. What is the nature of the estate which the wife takes?

The complainants insist that Elizabeth's estate was general, and that her husband was tenant by the curtesy, and, as he did not die until 1910, no statute of limitations has run against them; that defendants are life tenants merely, in possession under Rufus, and upon his death defendants' right of possession terminated and that of complainants accrued.

It is a general principle of equity that, when one buys land in the name of another and pays the consideration money, the land will be held by the grantee in trust for the person who so pays the consideration price. It is generally considered that this doctrine rests upon the natural presumption that he who supplies the money to pay for the land means the purchase to be for his own benefit; but this principle has its exceptions which are as generally recognized and ac-

cepted in courts of equity as the principle itself. As where a parent purchases land in the name of a child *prima facie* the purchase is deemed and intended as an advancement so as to rebut the presumption of a resulting trust for the parent. The law considers the moral obligation of the parent to provide for his children as of such consequence as to rebut the general presumption that the parent was buying for himself. And the same presumption exists in the case of a purchase by a husband in the name of his wife. Second Story's Equity, sec. 120.

It is therefore an established doctrine that, where the husband pays for land conveyed to the wife, there is no resulting trust for the husband, but the purchase will be regarded and presumed to be a provision for the wife. In a case similar in its facts to the one under consideration, the supreme court of Massachusetts used this language:

"Cases, which turn upon the general doctrine, that a gift to the wife is a gift to the husband do not apply to this case, which is a grant by the husband himself to the wife. The doctrine that a gift to the wife is a gift to the husband cannot apply where the husband himself makes a gift or grant to the wife, which surely cannot be taken as a gift or grant to himself. Besides, in all cases where the intention to give a separate property to the wife is manifest, that intention is to be carried into effect; and, where the husband himself makes a gift or grant to the wife, the intention to relinquish his own rights in favor of the

wife, and thus to give her a separate property or interest, is necessarily and most clearly and unequivocably manifested and declared. The cases, therefore, which have been referred to, to show that expressions such as those used in the power, do not create a separate property in the wife cannot apply to this case, while by these terms, as between the husband and wife, the intention of the husband to give a separate right and interest in the property to the wife is unequivocally declared, and such intention, by all the authorities, is to be carried into effect." *Whitten* v. *Whitten,* 3 Cush. (Mass.), 191.

To the same effect is the case of *Kimbrough* v. *Kimbrough,* 99 Ga., 134, 25 S. E., 176. In that case the court said:

"Where a husband with his own money purchased and paid for a home and deliberately and intentionally had the same conveyed to his wife, with no understanding or agreement that he was in any event to have an interest in the title, the transaction amounted to a gift from the husband to the wife, and as between them the property became absolutely her separate estate."

Our own case of *Barnum* v. *Le Master,* 110 Tenn., 640, 75 S. W., 1045, 69 L. R. A., 353, establishes the proposition that a conveyance of lands made by a husband to his wife in the usual form, without any words indicating an intention to do so, has the effect in law to create a technical, separate estate in the wife. The reasoning of that case is full and cannot be added to

Ferguson v. Booth.

or strengthened by us. It is the leading case in this State upon the propositions stated and establishes beyond further controversy that the law conclusively presumes that in a conveyance made by husband to wife the husband intends that his act shall have the effect that it purports to have upon its face, and that is that he part with all his interest in the property conveyed. The rationale of that case is that the mere fact of the conveyance from husband to wife conclusively ascertains the husband's intention to be that the wife is to hold the property as her separate estate. The reasoning applies with equal force where the husband purchases real estate and pays the consideration price and directs that the conveyance be made to his wife without any reservation of his own rights as husband. Such an act excludes the thought that he intended the purchase for his own benefit.

We recognize the rule to be that, where a stranger conveys real estate to the wife, it is necessary for the use of apt words clearly expressing the intention to cut off the marital rights of the husband in order that the wife may have a separate estate. But those cases are not this case and should not be confused with it. Some of them refer to the grantor as a third party in connection with the statement of the rule referred to, but by that, we apprehend, is meant a stranger to the husband and the wife, and no reference is meant to transactions between the husband and the wife. The transaction is none the less between husband and wife because the husband has the grantor to convey directly

to the wife upon the payment of the purchase money by him rather than take a deed to himself and he convey to the wife. The substance, and therefore the intention, is the same, and it is the intention which must control. *Barnum* v. *Le Master,* supra. We are of opinion, therefore, that the deed of Shields and others to Elizabeth vested in her a technical separate estate. This being concluded, her deed to her husband with her proper privy examination was valid, and vested in him the title which she theretofore held. This latter deed being valid, the complainants have no interest in the land sued for, and the decree of the chancellor dismissing the bill is in all respects affirmed.