JAMES A. GREENE, Adm'r, v. CHESTER GREENE
et al.—272 S. W. (2d) 483.

Middle Section.  August 27, 1954.

Petition for Certiorari denied by Supreme Court, November 16, 1954.

240

A. A. Kelly, of South Pittsburg, and Paul A. Swafford, of Jasper, for appellant.

W. C. Abernathy, of Tracy City, for James A. Greene, Adm'r.

Robert L. Keele, of Manchester, for Chester Greene.

John H. Marable, of Tracy City, guardian ad litem, for Kenneth Green and Ellen June Greene.

FELTS, J.  In January, 1951, Luther Greene died intestate, owning the legal title and in possession of a farm, with a quantity of farm machinery, equipment, and livestock thereon, in Grundy County.  He was unmarried, childless, and his next of kin and heirs at law were his sister, Miss Ruby Greene, and his three brothers, James A. Greene, Chester Greene, and Marvin Greene, deceased, represented by his two children, Kenneth Green and Ellen June Greene.

This record presents a controversy between the sister Ruby and the three brothers over the ownership of a one-half undivided interest in this realty and personalty. She claims Luther held this property subject to a resulting trust for her so that she owns a one-half undivided interest therein; while the others deny this and contend that the entire beneficial interest was in Luther and on death passed equally to each of his four heirs, the one-fourth share of the deceased brother going to his two children.

The bill was filed by James A. Greene, administrator of the estate of Luther Greene, deceased, and Ruby against the others above named.  It set out that Luther Greene held title to five tracts of land; and that the *first tract* was conveyed to him by Buford Haynes by deed March 2, 1938; the *second* and *third tracts,* by the County Court Clerk by deed May 25, 1928; the *fourth tract,* by William Aylor and wife by deed April 27, 1939; and the *fifth tract,* by the widow and heirs of J. K. P. Pearson, deceased, by deed November 12, 1921.

The *second* and *third tracts* had been the home of C. E. Greene, the father of these parties. He and his wife Margaret had seven children: Luther, James A:., Chester, Marvin, Mary, Harlan, and Ruby. The mother died in 1913; Mary died intestate, without issue, prior to 1924; and the father, C. E. Greene, died intestate October 5, 1924, and his land (the second and third tracts) descended to his six surviving children. Luther purchased the shares of three of the others in 1927, and in 1928 purchased the land at a court sale and it was conveyed to him by the Clerk, as above stated.

These five tracts were contiguous and when Luther Greene acquired them he began to improve and use them as a farm, and operated this farm up to the time of his death. Neither he nor his sister Ruby ever married. For many years she lived with him on this farm and kept house for him. At the time of his death, on January 26, 1951, he had a herd of cattle, and other livestock, and a considerable amount of farm machinery and equipment, and other personal property on this farm.

The bill stated that Ruby Greene claimed a one-half undivided interest in this real estate and personal property, and it sought to have this controversy determined, the rights of the parties declared, the land sold for partition, and the administration of the estate transferred from the County Court to the Chancery Court.

An order was entered allowing Ruby Greene to withdraw as complainant and to intervene as defendant and cross complainant. She filed an answer and cross bill in which she alleged that shortly after the death of their father, when the others left her and Luther alone at the old home place, she and he entered into an agreement to live there together, to purchase the interest of the others, to acquire other lands, to build a new home for them-

selves, and to develop and operate the properties as a farm.

She further averred that it was part of this agreement that, as they purchased lands, the legal title thereto should be taken by Luther and held by him for the joint use and benefit of both her and himself; that, in keeping with this agreement, on September 23, 1927, she made a deed conveying to Luther "her undivided interest" in the C. E. Greene home place; that this "deed made a formal recitation of $100.00 consideration," but in fact no consideration was paid, because the conveyance was made pursuant to their agreement that he would take and hold title to the land for both of them.

She further alleged in her cross bill that, pursuant to their agreement, she lived there with Luther, kept house, did the housework, raised chickens and pigs, supervised the work in the garden and truck patches, and assisted Luther in the operation of the farm. She further averred that by their joint efforts they acquired the old home place (the second and third tracts), the Cox place (the first tract), and the Sam Henley place (the fourth tract), and the personal property on the farm; and that title to this land and personalty was taken by Luther and held both for her and himself.

She admitted that Luther Greene had acquired his title and interest in the J. K. P. Pearson tract (the fifth tract) prior to the agreement between her and him and for that reason she asserted no claim to any interest in that tract under said arrangement, but claimed only her one-fourth share therein to which she was entitled as one of the heirs at law of Luther Greene, deceased.

A demurrer was filed to the cross bill, which was overruled, and answers were filed by the two brothers, and

the guardian ad litem filed answers for the two minor defendants. The cause was heard before the Chancellor and a jury. At the close of all the evidence, cross defendants moved to withdraw the issues from the jury, which motion was overruled, and the case was submitted, the issues and the jury's responses being as follows:

"Issue One

"At and prior to the time of the purchase of the property did Ruby Greene and Luther Greene agree to purchase the same jointly with title being taken in Luther Greene for the use and benefit of both of them?

"Answer: Yes

"Issue Two

"If your answer to Issue One is 'Yes' what property did this agreement apply to:

Answer: First tract: Yes

Second and Third tracts
(Home tract)? Yes

Fourth tract? Yes

"Issue Three

"At and prior to the time of the purchase of the personal property, farm machinery, livestock, and equipment kept on the farm, did Ruby Greene and Luther Greene have an agreement to purchase the same with title to be taken in the name of Luther Greene for the joint use and benefit of both of them?

"Answer: Yes"

"Issue Four

"Did Ruby Greene contribute to the purchase of said properties by transferring title of her individual interest in the lands by contributing money and by performing work and services?

"Answer: Yes

The Chancellor approved the verdict and entered it on the minutes. Cross defendants moved the court for a new trial upon these grounds among others: (1) the court erred in admitting the testimony of cross complainant as to her agreement with her deceased brother; (2) the court erred in overruling cross defendants' motion to withdraw the issues from the jury because there was no evidence of a resulting trust.

Cross defendants also filed a motion for a decree dismissing the cross bill notwithstanding the verdict, upon the grounds that the evidence did not justify the jury's responses to the issues, and that cross complainant failed to allege or prove any facts sufficient to make out a resulting trust in her favor.

The Chancellor filed an opinion overruling the first motion, sustaining the second in part, and holding that cross complainant's testimony respecting her agreement with her deceased brother was inadmissible as to the personalty but admissible as to the realty, and that the cross bill should be dismissed as to the personalty and sustained as to the realty—to the extent of decreeing a resulting trust in favor of cross complainant upon a one-half undivided interest in the realty; and he decreed accordingly.

Cross defendants appealed and insist that there was no evidence sufficient to establish a resulting trust and the Chancellor should have dismissed the cross bill as to the realty as well as to the personalty. Cross complainant appealed and insists that the evidence was competent and sufficient to make out a resulting trust both in the personalty and in the realty and the Chancellor should have so decreed.

It appears from the evidence that Luther Greene was

a rural mail carrier and received a good salary for the better part of his adult life. He was thrifty, energetic, and a successful farmer. The proof shows that the several tracts of land were conveyed to him as set out in the bill, and he operated the farm and accumulated the personal property on hand at his death.

Neither he nor his sister Ruby ever married. She was the youngest of the children and had been living in Arkansas with her oldest brother. Sometime after the death of their father she came back to the old home place, lived there with Luther and Harlan until the latter moved away in 1929, and she and Luther lived there alone until his death.

When she came there to live, she was a young girl without employment or any particular training. It seems that her brother Luther furnished her a home and support, and she kept house for him, did the housework, supervised the work in the garden, and raised chickens. It does not appear that she had any money or outside source of income. Nor does she claim to have contributed any specific sum of money to the purchase of any of the property involved, either the real estate or the personalty.

Her testimony leaves considerable doubt as to the date of her agreement with Luther and the terms of such agreement. It rather indicates that the agreement was not made until after Harlan left in 1929—after Luther had purchased the shares of the others in the home place. Asked why the deeds were taken in Luther's name, she said: "A. Well, I gave him the honor of being the head of the house is all I know."

It is doubtful whether the evidence supports the jury's responses to the issues or the jury's findings of facts. But assuming it does, and taking such findings as the true facts, are they sufficient in equity to raise a resulting

trust in favor of cross complainant upon a one-half undivided interest in the realty and personalty?

█ It is said that the source and underlying principle of all resulting trusts is the equitable theory of *consideration*. That theory is that the payment of a valuable consideration draws to it the beneficial ownership; that a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property. Pomeroy's Eq. Jur. (5th ed.), Secs. 981, 1031, 1037; 2 Lawrence on Eq. Jur. (1929 ed.), Sec. 565.

█ So a familiar instance of a resulting trust is where property is conveyed to one and another furnishes the consideration. "Where property is purchased and the conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him." Pomeroy's Eq. Jur. (5th ed.), Sec. 1037.

"In order that this effect may be produced, however, it is absolutely indispensable that the payment should be actually made by the beneficiary, B, or that an absolute obligation to pay should be incurred by him, *as a part of the original transaction of purchase,* at or before the time of the conveyance; no subsequent and *entirely independent* conduct, intervention, or payment on his part would raise any resulting trust." Pomeroy's Eq. Jur. (5th ed.), Sec. 1037.

█ █ In Walker v. Walker, 2 Tenn. App. 279, 291, this Court reviewed the authorities on resulting trusts, and Presiding Judge Faw, with his accustomed thorough-

ness and accuracy, summarized the result of the cases, which we quote in part:

"The trust arises, if at all, from the fact of payment of the consideration by the cestui que trust, and not from any agreement of the parties. 1 Perry on Trusts (4 Ed.), secs. 134-135; Pillow v. Thomas, 1 Baxt. 120, 142 [60 Tenn. 120]; McClure v. Doak, 6 Baxt. 364, 370 [65 Tenn. 364]; Sullivan v. Sullivan, 86 Tenn. 376, 381 [6 S.W. 876]; Perkins v. Cheairs, 2 Baxt. 194, 200 [61 Tenn. 194]; Wells v. Stratton, 1 Tenn. Ch., 328, 332, 336-337; Jackson v. Jackson, 3 Shan. Cas. 19, 29; Gee v. Gee, 2 Sneed 395, 403 [34 Tenn. 395]; Clark v. Timmons (Tenn. Ch. A.), 39 S. W. 534, 535.

"The trust must arise out of the state of facts existing at the time of the purchase, and attach to the title at that time, and not arise out of any subsequent contract or transaction. McClure v. Doak, 6 Baxt. 364, 369 [65 Tenn. 364]; Gee v. Gee, 2 Sneed 395 [34 Tenn. 395]; Sullivan v. Sullivan, 86 Tenn. 376, 381 [6 S.W. 876]." 2 Tenn. App. 291.

■ In that opinion it was further shown that no trust can result from a mere parol promise or an agreement by one person to purchase land and give another an interest therein. In that connection the Court further said:

" " 'A trust results from the acts, and not from the agreements, of the parties, or rather from the acts accompanied by the agreements; but no trust can be set up by mere parol agreements, or, as has been said, no trust results merely from the breach of a parol contract; as if one agrees to purchase land and give another an interest in it, and he purchases and pays his own money, and takes the title in his own

name, no trust can result.' 1 Perry on Trusts (4 Ed.), sec. 134.

" 'It is a familiar rule that a trust must result, if at all, at the instant the deed is taken and the legal title vests in the grantee. No oral agreements, and no payments before or after the title is taken, will create a resulting trust, unless the transaction is such that, at the moment the title passes, a trust will result from the transaction itself. There must be an actual payment from a man's own money, or what is equivalent to payment from his own money, to create a resulting trust.' Clark v. Timmons, et al. (Tenn. Ch. A.), 39 S.W. 534, 535." 2 Tenn. App. 291.

In Justice v. Henley, 27 Tenn. App. 405, 410, 181 S. W. (2d) 632, this Court, in an opinion by Howell, J., discussed the doctrine of resulting trusts and the admissibility of parol evidence as to such trusts. It was there said:

" ' "The parol testimony is admitted, not to show an agreement to purchase for another, but to show that the purchase money was paid by the party claiming, notwithstanding the deed was taken in the name of another person." Perkins v. Cheairs, (61 Tenn. 194, 201), 2 Baxt. 194, 201.' " 27 Tenn. App. 410, 181 S. W. (2d) 634.

Payment of a part of the consideration, under such circumstances that if the whole were paid a trust would result, creates a trust *pro tanto,* if the amount paid be definite or constitute an aliquot part of the whole consideration. But a general contribution is not sufficient to raise a resulting trust. 2 Lawrence on Eq. Jur. (1929 ed.) Sec. 571; Pomeroy's Eq. Jur. (5th ed.), Sec. 1038, pp. 77-78; Perkins v. Cheairs, 61 Tenn. 194, 200-202; Haggard v. Benson, 3 Tenn. Ch. (Cooper's),

263, 278; Botsford v. Burr, 1817, 2 Johns. Ch., N.Y., 405, 410; Socol v. King, 36 Cal. (2d) 342, 223 P. (2d) 627; Annotation, 42 A.L.R. 52.

◼ To set up a resulting trust by parol requires a greater degree of proof than a mere preponderance of the evidence. The evidence must be clear and convincing. Hoffner v. Hoffner, 32 Tenn. App. 98, 104, 221 S. W. (2d) 907; Hunt v. Hunt, 169 Tenn. 1, 9, 80 S. W. (2d) 666; Walker v. Walker, supra; see other Tennessee cases cited in Annotation, 23 A.L.R. 1513-14.

◼ Accordingly, the any-evidence rule, applicable to jury trials in ordinary civil cases, is not applicable in the case of a parol trust. It is improper to submit the issue of such a trust to a jury unless there is clear and convincing evidence in favor of the proponent. Hunt v. Hunt, supra; Greenwood v. Maxey, 190 Tenn. 599, 611, 231 S. W. (2d) 315.

Such is the general rule. Referring to parol evidence to establish a resulting trust, Pomeroy says:

"It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt. Where the payment of a part only is claimed, the evidence must show, in the same clear manner, *the exact portion of the whole price which was paid.*" (Italics supplied.) Pomeroy's Eq. Jur. (5th ed.), sec. 1040, pp. 82-84.

◼ In the light of these principles, looking to the evidence of cross complainant, we think it fell short of making out a resulting trust in the real estate title to which was held by her brother Luther. As we have seen, he acquired a share in the old home place (second and third tracts) by inheritance upon the death of his father

in 1924. Certainly, it cannot be claimed that he took this share burdened with any trust for his sister.

It is equally clear that she cannot claim that any trust resulted to her in respect of her share, or ''her undivided interest,'' which she conveyed to him by her deed in 1927, upon the consideration recited in the deed; nor can she claim that such conveyance was a contribution by her to any trust property. She is precluded from doing this by her deed.

It is elementary that a grantor, who by his deed conveys real estate to another person upon a valuable consideration, cannot claim that any trust resulted to himself from such conveyance or that his grantee took the title subject to any such trust. In Pomeroy's Equity Jurisprudence (5th ed.), sec. 1036, p. 69, it is said:

''If, therefore, there is in fact no consideration, but the deed recites a pecuniary consideration, even merely nominal, as paid by the grantee, this statement raises a conclusive presumption of an intention that the grantee is to take the beneficial estate, and destroys the possibility of a trust resulting to the grantor, and no extrinsic evidence would be admitted to contradict the recital, and to show that there is in fact no consideration,—except in a cause of fraud or mistake.''

The author supports this statement with citations of cases of the United States Supreme Court and of many of the states. To the same effect: Bogert on Trusts and Trustees, Vol. 2A, sec. 453, p. 414; 54 Am. Jur., Trusts, Sec. 202, pp. 157-158.

While for some purposes it is competent for a party to show by parol what the real consideration of a deed was, he cannot, under the guise of doing that, deny that there was any consideration for the purpose

of destroying the effect of his deed. Stone v. Shuttle, 3 Tenn. App. 274, 276; Ferguson v. Booth, 128 Tenn. 259, 265, 160 S. W. 67, 51 L.R.A., N.S., 343, Ann. Cas. 1915C, 1079.

There being no fraud on the part of the grantee, the grantor, cross complainant, is estopped to deny, and conclusively bound by, this recital of a valuable consideration in her deed. Ferguson v. Booth, supra; Battle v. Claiborne, 133 Tenn. 286, 302-305, 180 S. W. 584.

In addition to what has been said above, the case for cross complainant meets further difficulty. The utmost effect of her testimony was that she and her brother made an agreement to live together and jointly to acquire the properties, and that she carried out the agreement by contributing work, services, and money toward purchasing the properties. Such was the finding of the jury upon the fourth issue.

But this did not go far enough. There was no proof as to the consideration paid for any of the properties—any of the realty or any of the personalty—and there was no proof as to the amount or value of any money or work or services contributed by cross complainant. That is, her evidence failed to meet the required test: "Where the payment of a part only is claimed, the evidence must show, in the same clear manner, the exact portion of the whole price which was paid."

The whole effect of the evidence for cross complainant, and of the finding of the jury, was that she made indefinite general contributions to the purchases of the properties, without showing the amount or value thereof or their proportion to the whole consideration in any particular case. Such general contributions were insufficient, under the authorities cited above. In Haggard v. Benson, supra, Chancellor Cooper said:

"But it is an elementary principle that a resulting trust can only arise at the instant the deed is taken and the legal title vests. No subsequent payments will create it. Gee v. Gee, 2 Sneed 395 [34 Tenn. 395]; Botsford v. Burr, 2 Johns. Ch., [N.Y.], 414; Rogers v. Murray, 3 Paige [N.Y.], 390; Wells v. Stratton, 1 Tenn. Ch. 328. To raise a resulting trust, moreover, the title of the whole, or of some aliquot part, of the property must vest with the deed; and therefore a *contribution of a sum of money generally will not suffice.* Crop v. Norton, 2 Atk. 74; White v. Carpenter, 2 Paige [N.Y.], 240." (Italics supplied.) 3 Tenn. Ch. 278.

In Socol v. King, supra, the Court declared:

"But the burden of proving the elements necessary to establish a resulting trust rests on the party asserting it, and one who relies on a *pro tanto* trust must establish definitely the proportional amount of the purchase price contributed. In the absence of such proof, a resulting trust will not be declared. [Citing numerous cases.]" 36 Cal. (2d) 348, 223, P. (2d) 631.

Cross complainant failed to carry this burden and failed to offer any proof as to the proportional amounts of her contributions to the considerations paid for the properties.

In view of our conclusion that the evidence for cross complainant was insufficient to make out a resulting trust either in the realty or in the personalty, it becomes unnecessary for us to consider whether such evidence, as affecting the personalty, was competent under Code Section 9780, preventing a party to a suit by or against a personal representative of a decedent from testifying as to any transaction with or statement by such decedent.

It results that the Chancellor's decree will be affirmed, insofar as it dismissed the cross bill as to the personalty, and reversed, insofar as it sustained the cross bill as to the realty. A decree will be entered here dismissing the cross bill, remanding the cause to the Chancery Court for further proceedings, and taxing the costs of the appeals against cross complainant and the sureties on her appeal bond.

Howell and Hickerson, JJ., concur.