Deaderick, J.,
delivered the opinion of the Court.
The complainant filed his bill in the Common Law and Chancery Court of the City of Memphis, on the 26th of February, 1866, against Sarah W. Fowlkes, executrix of Jeptha Fowlkes, and the widow and heirs at law of Wm, R. Harris.
The bill alleges that the complainant, on the 1st. of December, 1864, bought of the said executrix a tract of land in Shelby county, containing one hundred and fifty-four acres, and took her deed for the same, which is exhibited with his bill; that he paid the purchase money in full, three thousand and eighty-jwe dollars, ($3,085), at the time the conveyance' was made to him; that the title was represented by the said executrix and her counsel, and E. "W. M. King, her “ testamentary adviser,” as valid, unembarrassed, and indefeasible;, that when he purchased the land,, the records of the Register’s office of Shelby county were beyond the limits of the State, having been removed South by the authorities, so that he could have no access to them; that he.had no knowledge of any cloud upon the title; and that the land he purchased is a part of a six hundred and forty acre tract which had been conveyed on the 29th of May, 1856, by the Sheriff of Shelby county and J. L. Bernard to Wm. R. Harris. The complainant then alleges that Jeptha Fowlkes was the real owner of the land so conveyed to Harris; that he died in December, 1863, having made a will and appointed his widow, the said Sarah W., executrix, with full power to convey, any or all lands owned by *747 him at the time of his death; and that the saidi Sarah was duly qualified as executrix; A copy of the will is exhibited with the bill. The complainant further alleges that the conveyance to Harris, although absolute upon its face, was in fact a trust for the use- and benefit. of Jeptha Fowlkes; and that such was the-agreement between them at the time of the conveyance. It seems that Gen. E. P. Gaines was, in 1839,. the owner of the six hundred and forty acre tract;, and that in September of that year he conveyed it to-trustees to secure certain debts. Under this trust deed the land was sold to Sterling Fowlkes, a cousin-of Jeptha. But the bill alleges and the evidence-shows, that Jeptha Fowlkes was the purchaser; that the purchase money was paid by him; and that the-conveyance was made to Sterling at his instance on-the 12th of November, 1850. On the 27th of March,. 1854, one J. L. Bernard recovered a judgment against Jeptha and Sterling Fowlkes for twenty-two hundred' and fifty dollars, ($2250), in the Common Law and Chancery Court of Memphis, on which execution was issued and levied upon the said tract of six hundred and forty acres, and was purchased by Bernard, the plaintiff in the execution. Next in the order of events follows the confession of a judgment by Sterling Fowlkes in favor of Jeptha Fowlkes, on the Law side of the-Common Law and Chancery Court of Memphis, for five thousand and thirty-seven dollars, ($5,037), on the 29th of November, 1854. This judgment was assigned by Jeptha Fowlkes to ¥m. R. Harris on the 21st of' May, 1856; and, in its redemption, was, on the -29th- *748 of May, 1856, put upon the land as an advanced hid by Harris. It is alleged in the bill that the assignment of the $5,000 judgment to Harris, was to enable him, as a judgment creditor, to redeem the land for Jeptha Fowlkes; that he paid nothing for it; that the redemption was made and the conveyance taken to him in trust for Fowlkes; and that if he advanced the money to pay Bernard, it was distinctly understood and agreed between him and Fowlkes, that he •should hold the title to the land merely as a security for $1370, the amount paid Bernard in its redemption. It is further alleged that Fowlkes afterwards paid Harris the amount advanced in the redemption of the land, and all other sums due to him from Fowlkes; that they had a full and final settlement of all their business, and that Harris was largely in Fowlkes’ debt; that Harris never took possession of the land, but that Fowlkes continued in possession and paid the taxes on it; and that the heirs of Harris are now claiming and threatening to sue for it. The bill prays that the deed from the Sheriff and Bernard be set -aside and cancelled, as a cloud upon the complainant’s title; that the legal title be divested out of the heirs of Harris and vested in the complainant: that the heirs of Harris be perpetually enjoined from instituting an action of ejectment against the complainant for the land, or any other action to disturb his possession; and “for general relief."
The widow and heirs at law of ¥m. B,. Harris file their answer, and claim the land under the conveyance to him; they allege that Jeptha Fowlkes was *749 largely indebted to him; that the money paid in redemption of the land was furnished by him, and was never repaid; that no trust existed in favor of Fowlkes ; and that the land belongs to them. In short, all the equities of the bill are met and denied in the answer.
The answer of Mrs. Fowlkes is a substantial reiteration of the allegations of the bill, with the specific allegation, that the final settlement of all the-matters between Wm. R. Harris and Jeptha Fowlkes, as alleged in, the bill, was had on the 11th of February, 1857; and that that settlement was “in particular in relation to said tract of land.” She exhibits-with her answer what she calls the “settlement.” She further claims, that after said settlement Harris became largely indebted to her husband; and specifies a note dated July the 18th, 1857, for $3,000. The exhibit relied upon, as evidencing a settlement, comprises a note of Fowlkes to I. G. Harris for $500, loaned July the 16th, 1865; a note to Wm. R. Harris for $300 cash, July the 23d, 1855, by said Fowlkes; and his obligation to convey to Wm. R. Harris three thousand six hundred acres of land in Arkansas, dated the 11th of February, 1857. Of course these do not tend to establish any such settlement as set out in the answer. The complainant, however, relies chiefly upon the testimony of J. C. Williams to establish a resulting trust in Harris, in favor of Jeptha Fowlkes in the six hundred and forty acre tract of land. Williams states that Jeptha Fowlkes and Judge Harris were talking in regard to the redemption of the six hundred and forty acre tract of land; that Fowlkes *750 wanted information in regard to its redemption; and that Harris told him how it could be redeemed. Fowlkes then agreed to assign the $5,000 judgment on Sterling Fowlkes, in order to make Harris a judgment creditor, so as to enable him to redeem for the benefit of Jeptha Fowlkes. Harris agreed to furnish about $1300, the amount due Bernard; and the amount -necessary to redeem the land from him; and he understood from both that this sum was necessary to redeem the land. Williams further stated, that after the redemption, he heard Harris say that Fowlkes and himself had had, prior to July, 1857 or 1858, a full settlement; and that Fowlkes owed him nothing; that he would convey the land back to him whenever he requested him to do so; and that Fowlkes had paid him back all the money he had advanced to redeem the land. Upon cross examination the witness stated that he understood from Judge Harris and Dr. Fowlkes both, that Dr. Fowlkes gave Judge Harris his obligation for the thirty-six hundred acres of land, as the result of the settlement of which he had spoken in his examination in chief. This witness further stated that he did not see the settlement made, but heard both parties say they had settled; and he does not know that there was any other item embraced in it, but the $1300 paid in redemption of the land; and $100 Dr. Fowlkes paid Judge Harris for him. Again he says: “ Fowlkes paid Harris the money a few days after the land was redeemed. I saw Folkes give Harris a check for $1300 or $1400. They were talking about the money that Harris had advanced, and *751 Fowlkes said that he had the money, and handed the check to Harris.” Witness did not recollect what Bank it was on. He says he never knew Harris to let Fowlkes have money except when he redeemed the land. Sterling Fowlkes states that he confessed the judgment in favor of Jeptha Fowlkes for $5037, to enable him as a judgment creditor to redeem the land. Upon the foregoing facts, it is insisted by the complainant’s solicitor and the solicitor for Mrs. Fowlkes that a trust results in favor of Fowlkes; that the money advanced was for him, as. a loan, and has been repaid; and that the complainant is entitled to have the naked legal title divested out of the heirs of Harris and vested in himself. There is no other testimony tending to establish the trust, while there are strong circumstances in the case going to negative such a conclusion.
Without determining other questions made in the cause, we are of the opinion that the testimony is not of that clear and convincing character which, by repeated adjudications of this Court, is held to be indispensable to set up a resulting trust. The legal title is in Harris. There is no testimony to show any fraud or bad faith on his part; nor any sufficient evidence to impeach the validity of his title. The purchase by Jeptha in the name of Sterling Fowlkes, and the confession of the judgment of $5000 by Sterling in favor of Jeptha, may excite a suspicion of a fraudulent intent upon the part of Jeptha Fowlkes; but no participation in such, intent is shown as to Harris, nor any knowledge of its existence. His sub *752 sequent acts indicating ownership of the land, are wholly inconsistent with the declarations ascribed to him by the witness Williams: — and the acquiescence in claims made by him in the presence of Fowlkes, are equally irreconcilable with the testimony of Williams and the claim now set up by Mrs. Fowlkes. Williams’ statement of conversations are contradictory and unreliable. He says at one time that the land was redeemed by the payment of a check for $1300 or $1400, which he saw delivered to Harris — in another part of his testimony he states that he was not present at the settlement, but that Dr. Fowlkes and Judge Harris both told him that they had had a full settlement, and that Fowlkes had paid Harris all he owed him; and leaves the impression that the money advanced in redemption of the land was paid in-lands in Arkansas. Both these statements are shown to be ' untrue in fact. Fowlkes was largely indebted to Judge Harris; and remained so indebted to the time of Harris’ death, in July, 1858. He never denied that indebtedness after Harris’ death, when applied to for payment by his administrators, nor set up any claim to the land in controversy. The settlement referred to by Williams occurred in February, 1857; yet, in March thereafter, Harris had his deed registered ; and in May, 1857, he compromised a suit with Irby, against whom he had brought an action of ejectment for a part of the land in controversy; and in the presence and hearing of Fowlkes asserted his title to the land to be perfect and exclusive; took the note of Irby for the land and made him a deed *753 for it; and the note with a balance unpaid upon it was in the hands of his personal representatives at the time this bill was filed.
There are other facts in the case, in support of the view we have taken, but it is sufficient to say: we are of the opinion that to support or raise a resulting trust against a title conveyed by deed, the proof must be of the most clear, convincing, and irrefragable character, as repeatedly held by this Court;, and that the proof in this case is not such as fulfills the requirements of this rule. We therefore hold that the Chancellor’s decree dismissing complainant’s bill as to the widow and heirs of Harris was correct. The widow and heirs of Harris file their answer as a cross bill, in which they pray that the complainant’s-deed from Sarah Fowlkes be cancelled and the cloud upon their title removed; that the complainant be dispossessed oí said land and that they be put in possession. It is objected to relief upon the cross bill, that. no bond for costs was given, and that the decree of the Chancellor granting relief thereon was,, therefore, erroneous; and the case of Harrell v. Harrell, 4 Col., 377, is cited to sustain the objection. In that case it is said: “ The title papers set out in the record do not sustain the allegations in the cross bill;, and if they did, we can take no notice of it for want of a bond,” etc. In the later case of Keel v. Cunningham, 2 Heis., 288, the Court say: “As there was no bond for costs nor any process issued thereon, the. answer could not be entertained as a cross bill.” In neither case does it appear that there was any ap *754 pearance to the answer as a cross bill, by filing an •answer thereto or otherwise. The inference is, there was not: as in the case last named, it would probably not have been stated as an objection to entertaining the cross bill, that no process was issued, if there had been voluntary appearance by answer; the only purpose of the process being to compel appearance. In this case the complainant, who is the party against whom relief is prayed, made his appearance and filed his answer, taking no' exception thereto. Sec. 4323 of the Code, authorizes the filing of an answer, as a cross bill, against a complainant; and Sec. 4409 authorizes- a defendant who files his answer as a cross bill to waive the oath of the complainant. It appears from these provisions that the answer can be filed as a cross bill against the complainant only. There is no requirement in the Statute that a bond should be given for costs: — and if the complainant answer without objection, that no bond has been given or process issued; we hold that he, thereby, waives the objection and can not insist upon it at the hearing. Did the Chancellor err in granting relief against the complainant upon the cross bill? We think not. The Chancellor . had the jurisdiction to grant the relief prayed for, and the pleadings and proof make a proper case for such relief. The decree of the Chancellor dismissing the complainant’s bill as against the widow and heirs of Harris and granting relief as prayed for in the cross bill, will be affirmed. But the Chancellor gave a decree against Mrs. Fowlkes in favor of the complainant for the amount *755 -of tbe purchase money paid by him for the one hundred and fifty-four acres of land. This decree is not warranted by the allegations of the bill. It is obvious that the bill was not framed with a view of obtaining any relief against Mrs. Fowlkes; on the contrary, it maintains the validity of the title eonveyed by her, and affirms her right and power to convey. The whole theory of this bill is that she did nothing more than she had a perfect right to do, and it insists that the Court shall ratify and affirm her acts. The bill had but the one object of obtaining the recognition and affirmance of the conveyance to the complainant by her. It asks no relief in any aspect of the case against her. The complainant can not, under the general prayer, ask different relief from that specifically prayed for, unless the facts and circumstances charged by the bill will sustain such relief. 1 Dan. Ch. Pr., 334. Here there is no prayer for relief of any sort against Mrs. Fowlkes, and no allegations in the bill upon which relief could be granted against her. The decree against her, therefore, was erroneous and will be reversed; and the bill of the complainant as against her will be dismissed, but without prejudice. The costs will be paid in this Court and in the Chancery Court, one-half by the complainant, Hall, and the other half by the defendant, Sarah Fowlkes.