NANCY R. PERKINS *v.* M. T. CHEAIRS *et al.*

1. RESULTING TRUST. *Does not exist. When.* Where the husband, for a nominal sum, purchases the reversionary interests in his wife's property from her brothers, promising to settle the same on her in fee, as part consideration, but dies without executing such agreement, the land descends to his heirs, without resulting trust to his widow.

2. STATUTE OF FRAUDS. A promise to convey lands, in future, though made at the time of taking a conveyance, is within the Statute of Frauds, and void.

Cases cited: Brown on Fraud, §§ 84, 85, 86; Am. Notes, 9694; Bullard on Trusts, 31; 2 Johnson's C. R., 408; 7 Ind., 310; 1 L. C. Eq., 178; 13 Ill., 335–6; 2 Am. R., 310; 51 Ill., 458.

---

### FROM MAURY.

---

Appeal from the Chancery Court. HILLARY WARD, Special Chancellor.

W. C. WHITTHORNE, D. CAMPBELL and JAS. D. PARK for Nancy R. Perkins.

BROWN & McCOLLUM, DeMOSS & MALONE, EWING, HOUSE & TURLEY, and J. W. WHITTHORNE, JR., for Cheairs *et al.*

DEADERICK, J., delivered the opinion of the Court.

In 1845 Nathaniel Cheairs made his will, and shortly thereafter died. Testator devised to his daughter, the complainant, then the wife of Constantine Perkins, a tract of land in Maury County, containing about 400 acres, during her life, and then to her heirs; but if she should die without heirs of her

body, then the land was to be vested in his four sons, Martin T., John W., Thomas D. and N. F. Cheairs, share and share alike, and their heirs for ever. Complainant was married to the said Constantine Perkins in 1832, being then about twenty years of age, and has never had a child. Her husband died intestate in 1864. Perkins and wife took possession of the land and moved to the place about the year 1847. On the 15th of July, 1850, Constantine Perkins obtained a deed of conveyance from Nathaniel F., Martin T. and John W. Cheairs, three of the four brothers of complainant, of their reversionary interest in the said tract of land. This deed upon its face conveys to said Constantine Perkins "the reversion of a certain tract or parcel of land," (describing it), in consideration of the sum of $1,000 paid to Martin F. Cheairs, $1,000 paid to John W. Cheairs, and $1,000 paid to Nathaniel F. Cheairs, by the said Constantine Perkins, the receipt whereof was acknowledged in the deed. The deed also contains the usual covenants of warranty of title, and recites that complainant has a life estate in the same, under the will of her father. This deed was acknowledged before the Clerk of the County Court of Maury County, by the makers, the 1st of November, 1858. In 1867 complainant filed her bill, alleging that her late husband was unwilling to repair and improve said land, unless he could secure to himself and complainant the whole estate in said land, as she had but a life estate, without prospect of a child, and in

the event of her death, the title to the land would vest in her brothers.

In view of these facts, it is alleged in the bill, "that said Constantine Perkins approached the four brothers and proposed to each of them to purchase their several and respective interests in and to said tract of land, so devised to complainant and them, stating and agreeing that if they, the said John W., Martin T., Thomas D. and N. F. Cheairs would, for a nominal sum, convey to him their respective interests in said tract of land, he, the said Constantine Perkins, would give and settle the entire estate upon their sister, the wife of said Constantine Perkins, so as to invest her with an estate in fee to said tract of land." The bill further alleges that the conveyance was made by three of her brothers, for a nominal consideration, expressed in the deed, of $1,000 paid to each, and upon the further consideration and trust that the said Constantine Perkins would, as he proposed and agreed to do, settle the entire estate upon complainant. Thomas D. refused to convey his interest, and the bill alleges that the registration of the deed was delayed in the hope and expectation that he would convey, and this is stated as one of the reasons why the completion of the settlement of the land upon her by her husband was delayed.

It is alleged that the interests of her brothers in the land were worth greatly more than $1,000 each, and that the conveyance to her husband was made

to him in "trust that he would make the settlement upon her as proposed, which she prays the Court to declare and enforce." The bill then states that the said Constantine Perkins died in 1864, in the midst of the war, and that "he failed, by any assurance of title whatever, to make said settlement, or discharge said trust," although he repeatedly stated to his confidential friends that he had made a will, and amply provided for complainant.

Complainant further states that she can not doubt, from the evidence before her, that her husband had made provision for her, settling by will upon her the said tract of land. The heirs at law of her husband, and the three brothers who conveyed to him, are made defendants to the bill. The heirs of Perkins answer, and deny that the land was bought by said Constantine, charged with any trust, in favor of complainant, or that any such trust as alleged can be enforced, and claiming, as heirs at law of said Constantine, his interest in the land.

The Chancellor decreed the complainant the relief prayed for, and the heirs at law of Perkins have appealed to this Court.

Nathaniel T. states in his examination as a witness that he agreed, as did his brothers, to sell to Perkins, upon condition that he would settle the land upon complainant, "by deed, in fee simple, with right of disposal as she pleased, reserving his right to live on it." That his object, and that of his brothers, was to secure the place to his sister, Nancy

R,, and a home for Mr. Perkins; and that it was with the express understanding with Mr. Perkins that the settlement of the same upon his wife should be made, that either of us ever consented to sell our interest. And witness further ˌstated that he had often heard Mr. Perkins say that the reason why he had delayed making the settlement was, that he hoped to induce Thomas D. to part with his interest, and then he could settle all of the tract of land upon his wife by one conveyance.

M. T. and John W. Cheairs make substantially the same statements as to the conveyance to Perkins.

J. T. Fleming states, that in December, 1862, he traveled from Arkansas to Maury County, Tennessee, with Constantine Perkins, and that he told him he had bought of the Cheairs' "a life-time interest in the place," upon condition that it was to be his wife's at his death; that he gave $1,000 for each share. He said he always kept his will, and he had given all his property by his will to his wife.

Other witnesses detail statements made by Perkins in his life-time, showing that he claimed a life estate in the land, and recognizing and calling it his wife's land. It may, therefore, be assumed that the statements in the bill, as to the agreement of Perkins to settle the land upon his wife, are clearly and satisfactorily established by the evidence.

For complainant it is insisted that this transaction created a resulting trust in her favor; that the surrender or gift by the brothers of the assumed and

unascertained difference between the $1,000 paid to each for his contingent remainder, and its actual value, was a payment by her towards the land, and was so intended, and that Perkins also intended to make a gift to his wife of the difference between the value of the life estate to be acquired by him and the fee.

Lord Hardwicke divided resulting trusts into three classes: 1. Where an estate is purchased in the name of one person, but the money or consideration is paid by another. 2. When a trust is declared only as to part, and nothing said as to the rest, what remains undisposed of results to the heir at law. 3. When transactions have been carried on *mala fide.*

Brown on Frauds, § 84, says: To constitute a resulting trust of the first class in real estate, it is necessary that the consideration money upon the purchase should have belonged to the *cestui que trust,* or that it should have been advanced by some other person as a loan or gift to him, or for his benefit. Tiffany and Bullard on Trusts, 31; 2 Johns. C. R., 408. However, it is held that if the party who sets up a resulting trust has made no payment, he can not be permitted to show by parol proof that the purchase was made for his benefit, or on his account. See also 7 Ind. R., 310. It is because of the payment of money or other valuable thing, that a trust results, and where part only of the purchase money has been paid by the *cestui que trust,* the trust results *pro tanto,* or for a part of the estate, propor-

tionate to such part of the purchase money advanced. But though there may be a trust of a part only of the estate purchased, it must be of an aliquot part of the whole interest in the property. The whole consideration for the whole estate, or for the moiety, or the third, or some other definite part of the whole, must be paid. Brown on Frauds, § 85-6; Am. Notes, L. C. Eq., 178.

These resulting trusts do not arise or depend upon any agreement of the parties, but are mere implications of law, from the fact of the purchase with another's money, or the fact of declaration of trust as to part of the estate only, and silence as to the remainder; or the fact of fraud in procuring the legal title. They arise upon the actual conveyance of land, and not upon an executory contract, to hold land in trust. Even where the contract or agreement to hold the land in trust is the means of obtaining the legal title, the trust is not created by the contract, but results, or is implied from the fraud. Brown on Frauds, § 184.

The deed to Constantine Perkins recites upon its face a consideration of $3,000, paid by him, and no other. The proof shows that he paid this sum, or bound himself to pay it, and no other consideration appears from the deed. But it is shown in the evidence that Perkins promised the vendors that if they would convey to him he would, at some future time thereafter, settle the property on his wife, and that upon this promise of Perkins, and the money consid-

eration, they executed a deed in fee simple to Perkins.

At the time of this conveyance the Cheairs brothers, under the will of their father, were to take the remainder in fee of the land, if their sister, who had the life estate, died without issue of her body. Perkins, under the parol contract, could take only a life estate, after the termination of his wife's estate for life, if she left no issue of her body. If she had issue, the interest of the brothers would be defeated, and of course Perkins would get nothing.

Can it be said that complainant paid any definite part of the consideration of the land to her brothers, or that they advanced for her any definite sum or proportion of the price of the land? True, they say he, Perkins, agreed, or promised that he would convey or settle the land upon her, retaining a life estate; but aside from the uncertainty of the interest of the vendors, and its indefinite value, the resulting trust does not arise upon the contract by parol of the parties, in the absence of fraud, but alone upon the payment by the *cestui que trust* of the purchase money, or some aliquot or definite part of it, and in cases unaffected by fraud, the parol testimony is admitted not to show an agreement to purchase for another, or that he promised to convey an interest in the land purchased to another, but to show that the purchase money was paid by the party claiming, notwithstanding the deed was taken in the name of another person.      Brown on Frauds, § 96.

The parol testimony shows, not that it was intended that Perkins should hold the land as trustee under the conveyance to him, but that he promised that he would convey to his wife by a separate deed, at some future time after the date of the deed made to him. Such a promise is within the statute of frauds, and can not be enforced.

It is likewise insisted in the argument that the brothers consented to convey to Perkins only in consideration of his promise to settle the property on his wife, and that his failure to do so was a fraud upon her rights, and that he or his heirs will be treated in equity as holding the legal title in trust for her.

The fraud which suffices to lay a foundation for such a trust is not simply that fraud which is involved in every deliberate breach of contract. But there must have been an original misrepresentation, by means of which the legal title was obtained, and an intention to circumvent, by means of the confidence imposed. Brown on Frauds, § 94; 13 Ill., 235-6; 2 Am. Rep., 310; 51 Ill., 458. And the fraud should be distinctly charged in the bill, and clearly proved. Brown on Frauds, § 96. In this case there is no allegation of fraud, nor is there any proof of it.

The result is, that we are of opinion that the complainant is not entitled to the relief prayed for, and we reverse the decree of the Chancellor, and dismiss the bill with costs.