BRADLEY L. DUNLAP, TRUSTEE v.'C. M. P'POOL and WIFE, etc.

Middle Section. June 26, 1926.

Petition for Certiorari granted and Judgment affirmed by Supreme

Court, March 12, 1927.

1. **Fraudulent conveyances. Voluntary conveyance is valid if not given to defraud creditors.**

A duly registered voluntary conveyance can not be impeached by subsequent creditors when not fraudulent as to existing creditors and not made with a view to defraud subsequent creditors.

2. **Trusts. A parol contemporaneous agreement made at the time of the execution and delivery of a deed that the vendee will hold the property conveyed in trust for the vendor is valid.**

A parol contemporaneous agreement made at the time of the execution and delivery of a deed to real estate that the vendee will hold the property conveyed in trust for a certain person is not within the Statute of Frauds and such a parol contemporaneous agreement is valid and may be enforced in a court of equity.

3. **Trusts. Evidence. Evidence held to show a valid parol trust.**

Where the evidence showed that the wife was the owner of land and was about to submit to a serious operation, and without consideration conveyed the land to her husband with the oral understanding that if she should recover the land was to be reconveyed to her, held to establish a valid parol trust not within the Statute of Frauds.

4. **Estoppel. Person entitled to property under a parol trust is estopped to enforce the trust against an innocent purchaser of the property from the record holder of the title.**

It is well settled that although a person may be entitled to enforce a parol trust and recover real estate from the record holder thereof, yet he will be estopped to enforce the trust against an innocent purchaser of the land from the record holder of the title.

5. **Estoppel. The same rule applies to a creditor who has extended credit to the record holder of the title on the strength of his ownership of the property.**

Where credit is extended on the strength of a recorded deed to the party receiving the credit, even though at the time of the execution of the deed there was a parol contemporaneous trust binding between the vendee

and the vendor, the vendor will be estopped to assert title to the property, as against such creditors, even though in the meantime the vendee has reconveyed the property to the vendor after the credit had been extended.

6. **Estoppel. Estoppel will not be invoked unless the conduct of the party has prejudiced the rights of party seeking to invoke the estoppel.**
A party will not be estopped from asserting the truth or invoking the rights which he is otherwise entitled to unless another's rights have been prejudiced by his conduct.

7. **Estoppel. Evidence. Evidence in the instant case held to show that there were no acts to constitute an estoppel.**
Where the evidence showed that the creditor did not examine the records to ascertain that the property stood in the name of the person to whom he extended credit, and there were no representations made on the part of the real owner of the property, but the creditor simply relied on general rumor that the party to whom he extended credit owned the land, held there was not sufficient evidence to show that the creditor had relied upon any action or conduct of the real owner of the land in extending credit to the record owner which would entitle the creditor to invoke the rule of equitable estoppel.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed.

Sizer, Chambliss & Sizer, of Chattanooga, for appellant, Trustee.

C. A. Noone and Joe Brown, of Chattanooga, for appellees, P'Pool and wife.

CROWNOVER, J. This was a suit by the trustee in bankruptcy to set aside conveyances made by C. M. P'Pool to his wife, Mrs. Maude D. P'Pool, alleged to be without consideration, voluntary and fraudulent as against the creditors of C. M. P'Pool.

The bill alleged that C. M. P'Pool had filed a voluntary petition in bankruptcy and was adjudicated a bankrupt on August 13, 1923, and that complainant was elected trustee and qualified as such and that his liabilities amounted to $5,741.39, with no assets of value scheduled;

But that on January 9, 1923, defendant, C. M. P'Pool, had conveyed by deeds a house and lot on Greenwood avenue, in Chattanooga, and thirty-five and one-half acres of land in Hamilton county to his wife, Mrs. Maude D. P'Pool, which conveyances were without consideration, voluntary and fraudulent as to his creditors;

That the thirty-five and one-half-acre tract had been previously conveyed by J. T. Webb to Mrs. Maude D. P'Pool on November 29, 1916, and on December 4, 1919, the defendants, C. M. P'Pool and his wife, Mrs. Maude D. P'Pool, conveyed said thirty-five and one-half acres and a house and lot on Cameron Hill to one J. F. McConnell, trustee, who on the same date conveyed said property to defendant, C. M. P'Pool, and that defendants, C. M. P'Pool and wife, Mrs. Maude D. P'Pool, on February 16, 1920, sold said house and

lot on Cameron Hill for $9,500 and on April 5, 1920, invested a part of the proceeds in the house and lot on Greenwood avenue, and took title in the names of both defendants as tenants by the entirety;

That during this time the defendant, C. M. P'Pool, was interested in and was a large stockholder in a corporation known as the C. M. P'Pool Hardware Company, doing a hardware business in the City of Chattanooga, Tennessee;

That Fred F. Wallace owned sixty-four shares of stock in the P'Pool Hardware Company, and on November 14, 1920, he sold said stock to the defendant, C. M. P'Pool, who executed his several notes of $200 each, payable monthly, for said stock, and which stock was held as collateral, and that said stock and notes were put up as collateral with the American Trust & Banking Company as security for the indebtedness that Wallace owed to said bank, and that the defendant, C. M. P'Pool, had paid several of said notes but owed a balance of $3,556.39 on said stock when he was adjudicated a bankrupt and that said indebtedness was a part of the liabilities of said bankrupt above mentioned;

That in June, 1923, the said P'Pool Hardware Company was adjudicated a bankrupt, and after the estate was wound up, it paid only twenty-eight cents on the dollar. Hence, the stock owned by C. M. P'Pool in said Hardware Company at the time he was adjudicated a bankrupt was absolutely worthless; that the defendant, Mrs. Maude D. P'Pool, had no money and paid no consideration for said property and the conveyances were wholly voluntary, that C. M. P'Pool was utterly insolvent and owed all the debts at the time of the conveyances and "that some, if not all, of his creditors extended credit to him and permitted him to contract and create the debts due them upon the faith and credit of his ownership of the real estate conveyed by him to his wife aforesaid," and that said conveyances were made for the purpose of hindering, delaying and defrauding his creditors.

The bill prayed that the conveyances be set aside and that said property be subjected to the payment of said debts, and for an injunction.

The defendants filed separate answers, and admitted that the Hardware Company and defendant, C. M. P'Pool, had been adjudicated bankrupts. They also admitted the sale of the stock by Fred F. Wallace to C. M. P'Pool, but alleged that Wallace knew that Mrs. P'Pool owned said property and that he did not extend credit on the faith thereof. They admitted the execution of said deeds and made an explanation of the different conveyances in an attempt to show that the said property had been purchased with the funds of the defendant, Mrs. Maude D. P'Pool, and that she was the owner of said property.

They alleged that the defendant, Mrs. Maude D. P'Pool, had to undergo an operation in the summer or fall of 1919, and that she was advised that she had to undergo another serious operation, and on December 4, 1919, she, fearing that she might not recover from said operation, conveyed the said property to McConnell, trustee, who in turn conveyed the same to defendant, C. M. P'Pool, and that there was a contemporaneous agreement that said property should be impressed with a trust, that is, the defendant, C. M. P'Pool, would take and hold said property for the use of his wife, Mrs. Maude D. P'Pool, as her agent, and that if she recovered from said operation he would reconvey said property to her, but if she did not recover from said operation then the property should be his absolutely;

That she underwent said operation and gradually recovered, and in December, 1922, her physician advised her that she had recovered, and that she then requested her husband to reconvey the property to her, and on January 9, 1923, defendant, C. M. P'Pool, conveyed the house and lot on Greenwood avenue, and said thirty-five and one-half acres on Harrison Pike in Hamilton county to the defendant, Mrs. Maude D. P'Pool, in pursuance to the trust agreement.

They denied that there was no consideration but alleged that the property was impressed with the trust, and that she had originally paid for same with her own funds, and that her husband had held the title for her as trustee, and that the conveyance was executed by him to her in 1923, in compliance with the trust agreement. They denied that the conveyance was made for the purpose of hindering, delaying and defrauding his creditors, as she had no knowledge of the financial condition of the Hardware Company or of defendant, C. M. P'Pool, as her mental and physical condition had been such that her husband had not discussed his business affairs with her.

She filed her answer as a cross-bill and prayed that her rights be declared and enforced, and that the conveyance from him to her be confirmed and a resulting trust declared.

The trustee answered the cross-bill and reaffirmed the allegations of the original bill and denied the allegations of the cross-bill.

Several depositions were taken and read to the Chancellor at the hearing, and the Chancellor decreed that the proof showed that the defendant, Mrs. Maude D. P'Pool, had furnished most of the purchase money, and that the property had been conveyed by her through a trustee to the defendant, C. M. P'Pool, with the parol agreement that he would hold said property in trust for her, as her agent, and in the event she recovered from said operation he would reconvey it to her, but if she did not recover then the property was to be his,

and that said property was impressed with a parol trust; that in pursuance to said trust agreement, the defendant, C. M. P'Pool, executed the conveyance to her on January 9, 1923. He held that as the title to the house and lot on Greenwood avenue had been in the names of the defendants as tenants by the entirety, the conveyance of C. M. P'Pool's interest in said house and lot was without consideration, voluntary and void as against his creditors, and he decreed that the same should be set aside in favor of the said trustee, but he held that the conveyance to Mrs. M. D. P'Pool was valid as to her interest in said house and lot and as to the thirty-five and one-half-acre tract as against the trustee in bankruptcy; but he further held that if the equitable owner, Mrs. Maude D. P'Pool, had permitted the grantee to hold himself out as the real owner and if any creditor was induced to extend credit to him upon the faith of his apparent ownership, then the equitable owner would be estopped to assert the trust as against such creditor, but the creditor's right in such a case would be peculiar to himself and that the trustee in bankruptcy of the grantee could not assert that right for him. In other words, the Chancellor held that the parol trust was valid except as against such creditors as were induced to extend credit to the bankrupt upon the faith of his apparent ownership, but that such right could not be enforced by the trustee in bankruptcy. He, therefore, dismissed the bill except as to the interest of C. M. P'Pool in the said house and lot on Greenwood avenue.

The complainant excepted to said decree and has appealed to this court and has assigned six errors, which may be summarized as follows:

(1) The court erred in not setting aside the conveyances and in not subjecting said property to the payment of the debts, because C. M. P'Pool had really paid for the property and conveyed it to his wife without consideration.

(2) The court erred in holding that there was a parol trust, as there was no competent parol evidence to establish said parol trust. Even if there was a parol trust, it is void as against creditors who dealt with him while he had title without knowledge of the trust, and extended credit on the faith of his apparent ownership of the property.

(3) The court erred in holding that the trustee in bankruptcy may not maintain this suit.

It is first insisted that the Chancellor erred in not granting complainant the relief prayed because the property conveyed had really been purchased and paid for by defendant, C. M. P'Pool. In reply to this we will say that after a careful examination of the record we are of the opinion that the Chancellor was correct in holding that the defendant, Mrs. Maude D. P'Pool, had furnished most of the pur-

chase money with which to buy the property, but aside from this, the titles were originally put in Mrs. Maude D. P'Pool before her operation, and it was not attempted to be shown that C. M. P'Pool was insolvent at the time or owed any creditors, nor is it attempted to be shown that the titles were originally taken in her for the purpose of defrauding any subsequent creditors. Even a duly registered voluntary conveyance cannot be impeached by subsequent creditors when not fraudulent as to existing creditors, and not made with a view to defrauding subsequent creditors; hence, the question of whether she originally furnished the money with which to purchase the property becomes immaterial, and in the absence of proof, we must assume that the title was legally in Mrs. Maude D. P'Pool at the time of her conveyance to defendant, C. M. P'Pool, through the trustee, before her operation in December, 1919. This assignment must be overruled.

It is next insisted that the court erred in holding that a parol trust could be created by parol evidence, and that there was competent parol evidence to establish the alleged parol trust, and it is insisted that a parol trust is void against creditors who dealt with defendant, C. M. P'Pool, while he had title without knowledge of the trust.

After a careful examination of the authorities, we are of the opinion that a valid express trust, involving real estate, enforcible in equity, can be created by a contemporaneous parol agreement made at the time of the execution and delivery of a conveyance of real estate absolute upon its face, and that the vendee may hold the property conveyed in trust except as against creditors of the original vendor and innocent purchasers of the vendee. See, Thompson v. Thompson, 54 S. W., 155; Renshaw v. First National Bank, 63 S. W., 205-6; Insurance Company v. Waller, 116 Tenn., 1; Woodfin v. Marks, 104 Tenn., 519; Mee v. Mee, 113 Tenn., 455; Click v. Click, 1 Heisk., 608.

It may be said that some doubt is thrown on this position in the cases of Perkins v. Cheairs, 61 Tenn., 194, 202; Susong v. Williams, 1 Heisk., 625, and Durant v. Davis, 10 Heisk., 522, but these cases were commented upon by Judge Neil in some of the cases above cited, and we think the principles above stated are now firmly settled in the foregoing opinions.

After an examination of the record in this case we think that the parol proof is sufficient to show that the property was conveyed by Mrs. P'Pool to C. M. P'Pool impressed with the trust that the property should be held by him as her agent with the distinct understanding that it would be reconveyed to her if she recovered. We think that the trust was established and that the property was impressed with the trust, which is valid against his creditors.

The only remaining question is whether she is estopped to now set up this trust against some of his creditors who extended him credit upon the faith of his apparent ownership.

If the creditors, or either of them, extended credit to C. M. P'Pool on the strength of his record title then we think by the weight of authority, Mrs. P'Pool would be estopped from asserting ownership of the property so as to defeat the creditors in the collection of their debts against him. If she, by her act or deed, vested the apparent title in her husband and permitted the deed to be placed of record, and the creditors examined the records in the Register's office and found the title in him, and extended credit to her husband upon the knowledge thus obtained, then clearly the doctrine of equitable estoppel may be invoked against her. See, Tellico Bank & Trust Company v. Loomis, 147 Tenn., 163; 30 C. J., 782; sec. 409; 12 R. C. L., 601-6, secs. 113-116; 21 C. J., 1172-5, sec. 176; 27 C. J., 645-7, sec. 412; 11 Am. & Eng. Ency. Law, 2 Ed., 430; Tenn. Hermitage National Bank v. D. Oliver Davis, Davidson County Equity, Memorandum Opinion by Supreme Court at Nashville, April 3, 1922.

But upon an examination of the record we find that they did not know that she ever owned the property or had any interest in the same. They did not know that she had conveyed the property to him and did not examine the record title to ascertain how he became the owner. We do not find anything in the record that warrants the conclusion that the creditors, or either of them, even knew that she had executed the deed through which the title was vested in C. M. P'Pool by her trustee, McConnell. It is not contended for the creditors that they had any knowledge from any source that she executed such deeds. The creditors did not examine the records in the Register's office and did not rely upon his record title, but relied wholly upon representations made by him and possibly others that he was the owner of the property, but it is not shown that said representations were made in the presence of his wife, or with her knowledge. It is not contended that she made any representations or did any act, of which the creditors had knowledge, that would estop her.

The only act of Mrs. P'Pool upon which the doctrine of estoppel is sought to be invoked against her, so far as the record discloses, is the mere fact that this property was conveyed by her through the trustee to her husband, and that she knew or should have known that the deed had been placed of record. This would be entirely sufficient, and would come clearly within the cases for a proper application of the rule of estoppel as to her, if it appeared that the creditors acted upon any knowledge that they, or either of them, had obtained that such a deed had been executed by her and placed of record. In other words, it is not only necessary that the wife

should have made some statement or have committed some such act, but it must also appear that the party invoking the estoppel acted and relied upon such act or conduct of the wife and was deceived thereby to his prejudice.

Admitting that she created the situation by which the record title was placed in her husband, the creditors were certainly not deceived or mislead by that act upon her part unless they knew or had some knowledge of the act about which they complain. It is not sufficient that she through her act put the title to the property in question in her husband and acquiesced in the deed being recorded in the Register's office. The question is, did the creditors rely upon that act of hers in extending the credit to her husband? If they did, she is estopped to assert her ownership against them. If they did not, then she is not estopped. If any act or conduct on the part of Mrs. P'Pool, with reference to the property in question, induced the creditors to extend credit to her husband, it would operate to estop her from asserting her rights as against such creditors. But we find nothing in the record that would warrant the conclusion that the creditors relied upon a recorded deed vesting the title in her husband. We find nothing in the record that would warrant a conclusion that they were mislead or deceived by the fact that she had through the trustee vested the apparent title to this property in her husband, but on the other hand the record discloses that they did not know of this act upon her part at the time they extended credit to him.

Equitable estoppel in such cases cannot be invoked against the owner of the property so as to defeat what otherwise would be her superior right or claim to the property, except upon some act, representation or conduct on her part of which the creditors had notice, relied upon and were deceived to their prejudice. See, Breeze v. Brooks, 22 L. R. A., 257; Blake v. Meadows, 30 L. R. A. N. S., 1. The cases are thoroughly reviewed on this question in the opinion of Judge Senter, filed at Knoxville, in the case of Fred. F. Wallace et al., v. C. M. P'Pool et al., Hamilton County Equity, 4 Tenn. App., 30, and it is not necessary for us to again review them in this opinion.

The last assignment of error is that the court erred in holding that the trustee in bankruptcy could not maintain this bill to set aside the said conveyances, and could not set up estoppel against Mrs. P'Pool. Since the case had been argued, appellant has filed an amended assignment of errors in which he states that he does not rely upon this assignment of error in the event this court, in this case, should be of the opinion that the other assignments of errors should be overruled. Hence, in view of our holding on the other assignments of errors, it becomes unnecessary to pass upon this assignment of error.

It results that all the other assignments of errors are overruled and the decree of the Chancellor is affirmed. The cost of the cause in the court below is adjudged against the defendants, C. M. P'Pool and Mrs. Maude D. P'Pool, but the cost of the appeal is adjudged against the appellant and sureties on the bond for writ of error, for which execution may issue. The cause is remanded to the chancery court of Hamilton county, for the purpose of making such orders and decrees as may be necessary for the disposition of C. M. P'Pool's interest in the house and lot in Highland Park.

It appeared from the briefs in this case that after the Chancellor had rendered his decree, and after the appeal granted in this case, Fred F. Wallace and the American Trust and Banking Company filed another bill against C. M. P'Pool and wife in the chancery court of Hamilton county, seeking to recover on the unpaid notes aggregating $3,556.39, alleging that Wallace had extended credit to C. M. P'Pool on the faith of his ownership of said house and lot and thirty-five and one-half acres of land and insisting that the defendant, Mrs. Maude D. P'Pool, was estopped to set up said parol trust against said indebtedness. The Chancellor tried that case and decreed in favor of the complainants, and held that defendant, Mrs. Maude D. P'Pool, was estopped to set up the parol trust as against the complainants in that suit. Hence, he decreed that said property should be subjected to the payment of C. M. P'Pool's indebtedness. The defendant appealed that case to this court at Knoxville, and the Western section of this court heard the case on appeal and reversed the decree. Since then the Middle and Western sections have been called into consultation on both cases and have passed upon the opinions presented, and all the judges concur.

Faw, P. J., and DeWitt, J., concur.