# HOFFNER v. HOFFNER et al.—221 S. W. (2d) 907.

Eastern Section.   January 14, 1949.

Petition for Certiorari denied by Supreme Court, June 18, 1949.

Jenkins & Jenkins, of Knoxville, for appellants.

Vertrees & Hartman, of Knoxville, for appellee.

McAMIS, J.   The bill was filed by Mrs. Nellie C. Hoffner against her former husband Walter B. Hoffner and his nephew George Hoffner, Jr., to enjoin a sale of Number 2228 McCalla Avenue in Knoxville, Tennessee, which the bill alleged defendants held in trust for complainant by reason of an oral representation that the property had been purchased for complainant's benefit.   The Special Chancellor overruled a demurrer filed by defendants relying on the Statute of Frauds, Code Section 7831, and after a hearing adjudged complainant entitled to the property. From a decree divesting title out of defendants and vesting it in complainant in fee defendants have appealed.

An amendment to the bill alleged that Walter B. Hoffner agreed to buy the property and "give" it and a certain sum of money to complainant, his former wife, if she would compromise and settle her suit, then pending in the Circuit Court of Knox County, for breach of an al-

leged promise to remarry, the original bill having alleged that upon defendant Walter B. Hoffner's representation that he had previously purchased the property for complainant and upon payment of a certain sum of money complainant permitted a judgment to be entered compromising and settling her suit for breach of promise. It was alleged that defendant, Walter B. Hoffner, had thereafter purchased the property taking the legal title in the name of his nephew, the defendant George Hoffner, Jr., for the purpose of defrauding complainant of her rights in the property. The prayer of the bill was for an injunction restraining defendants from selling the property as they were attempting to do and from molesting complainant's possession.

Answering the bill, defendants denied the alleged agreement to purchase the property for complainant, renewed their defense of the Statute of Frauds and set up a payment of $875.00 accepted in a writing signed by complainant, who was represented by an attorney, as a "final and complete settlement and satisfaction of her suit * * * for damages, in an alleged breach of promise to marry." The written release is copied into the answer and relied upon as a complete bar to the present suit. It was admitted that the legal title to the property had been taken in the name of George Hoffner, Jr., upon his execution of a note secured by deed of trust upon the property for $4,000.00 but it was denied that this was done for the purpose of defrauding complainant or that George Hoffner, Jr., held the title in trust for her benefit.

Complainant and defendant Walter B. Hoffner were divorced in April, 1943. Complainant testified that she filed the bill for divorce at Hoffner's request because he

said "he wanted to see how it would feel to be free for a while" but that he would later remarry her; that upon this representation she agreed to accept $2,500.00 in cash as alimony; that within a few months Walter B. Hoffner promised to remarry her. She says Hoffner's promise to purchase the property for her was made at Hoffner's store when no one was present. At one point in her testimony she says the agreement to purchase the property was made after the breach of promise suit was settled and at another that it was made before the release was signed. Her testimony does not support the statement contained in the bill that defendant represented that he had already purchased the property when the suit was settled. Her testimony on that focal point is that he only promised to do so. She says she did not tell her attorney that she was to get the property in addition to the cash settlement on defendant's advice not to do so because the attorney would charge her a larger fee if he knew she was also getting the property. She admits she took no steps beyond requesting defendant to give her the deed until the bill was filed, a period of almost three years, offering as the reason for the delay that she had great confidence that defendant would keep his promise.

Complainant's sister who has been living with complainant in the property since the divorce testified that defendant continued to visit complainant up until about a year before she testified and that she had heard him say the property "was hers, that she and the dog would always have a home." She admitted on cross-examination that about a week before the suit was filed she made a deposit of $100.00 to buy the property explaining that this was done to "stall for time" until the bill could be

filed. Her husband testified he once heard Hoffner say complainant could live in the property as long as she was single.

The estranged and divorced second wife of defendant testified that about a month before she and defendant were married he told her of his intention to buy the property and give it to complainant. Notwithstanding, however, she attached the property when she filed her bill for divorce.

The foregoing was all the proof offered by complainant to establish the trust alleged in the bill.

Defendant emphatically denied agreeing to buy the property for complainant. He says he did not know the property was for sale when the breach of promise suit was settled; that, in 1945, he bought the property for $4,000.00 cash and took the title in the name of his nephew and a deed of trust from him for the purchase price as he had done in a number of other instances because he had no children and wanted the property to go to George at his death. George Hoffner, Jr., testified to this practice and the testimony of a real estate agent is to the same effect. Their testimony clearly shows that George Hoffner, Jr., holds the property as trustee for Walter B. Hoffner.

Defendant admits allowing complainant to remain in the property but says this was because, due to the housing shortage, she had nowhere else to go and out of charity he allowed her to live in it without paying rent.

We think the evidence falls short of showing that defendant bought the property in the name of his nephew for the purpose of defrauding complainant. The undisputed evidence shows that he had bought other property the same way. If his purpose was to defraud complainant

it would seem reasonable that he would have kept the money concealed without buying the property at all. We do not understand that the able Special Chancellor found to the contrary.

■■ We think the demurrer was properly overruled. If, as alleged in the bill, defendant procured a dismissal of the breach of promise suit by falsely representing that he had already purchased the property for complainant there would result a constructive trust in her favor. Equity will raise a constructive trust to prevent the perpetration of a fraud and to satisfy the ends of justice. Gibson's Suits in Chancery, Section 931.

Apparently, however, relief was not granted on the theory of a constructive trust but upon the theory of a resulting trust on the reasoning that, since complainant gave up a valuable right in dismissing her suit, the case is no different than if she had given defendant a sum of money on his agreement to use it in the purchase of the property in her name. Defendants insist that the proof fails to establish such an agreement but, if established, it rests entirely in parol and is unenforceable under the Statute of Frauds as an agreement to convey real estate.

■ The seventh section of the Statute of Frauds is not in force in Tennessee and a trust in real estate may rest upon a parol agreement. Woodfin v. Marks, 104 Tenn. 512, 58 S. W. 227; Thompson v. Thompson, Tenn. Ch. App., 54 S. W. 145; Hunt v. Hunt, 169 Tenn. 1, 9, 80 S. W. 2d 666; Savage v. Savage, 4 Tenn. App. 277.

■ A trust results by implication of law where one person having funds of another, invests them without direction of the owner and takes title in himself. A trust of that kind is known as a resulting trust. Perkins v. Cheairs, 61 Tenn. 194, 199; Walker v. Walker, 2 Tenn.

App. 279, 293; Justice et al. v. Henley et al., 27 Tenn. App. 405, 409, 181 S. W. 2d 632; Fehn v. Schlickling, 26 Tenn. App. 608, 175 S. W. 2d 37; 54 Am. Jur. 152.

As noted, however, such a trust arises purely by implication of law from the payment of the consideration by the person claiming the beneficial title. It does not arise or depend upon any agreement of the parties. Perkins v. Cheairs, supra; Walker v. Walker, supra.

The consideration moving from the cestui que trust may be property, labor, a personal undertaking, or the cancellation of an indebtedness. 54 Am. Jur. p. 153, Trusts, Sec. 194.

To set up such a trust without written support there must be more than a mere preponderance of the evidence. It must be clear and convincing, Hunt v. Hunt, supra, 169 Tenn. 1, 9, 80 S. W. 2d 666, clear and unequivocal, Hall v. Fowlkes, 56 Tenn. 745, clear, cogent and convincing, Stone v. Manning, 103 Tenn. 232, 52 S. W. 990, and such that the court may be fully satisfied that the facts relied upon are true and are sufficient to create the trust, Walker v. Walker, supra.

The obvious reason underlying the rule requiring proof of high probative value is the prevention of frauds and the protection of written muniments of title from spurious and ill-founded claims by strangers to the title.

In this case if any of the consideration for the purchase of the property moved from complainant it was in the form of an agreement to dismiss the breach of promise suit. Assuming the validity of complainant's insistence that the dismissal of the suit was as much the furnishing of a valuable consideration as the payment of money with which to make the purchase, we come to the ultimate question of whether the dismissal of the

suit was in consideration of the cash payment or whether there was to be an additional consideration in the purchase of the property for complainant's benefit. The evidence supporting complainant's claim in that regard must be of the high character indicated by our cases above cited. A mere preponderance of the evidence will not suffice.

We think the evidence falls far short of meeting the test of cogency. We are not convinced that there was to be any other consideration except the payment of $875.00 which complainant solemnly agreed in writing in the presence of her attorney and upon his advice to accept in full settlement and satisfaction of her suit. Only a few months before she had voluntarily divorced the defendant in the suit and it is not easy to believe that she was so greatly damaged by the breach of any promise to remarry. Her explanation that she agreed to the divorce because ''he wanted to see how it would feel to be free for a while'' and would remarry her in addition to being novel is hardly consistent with the great affection for her husband which she professed. Her explanation that she withheld from her attorney all knowledge of the alleged agreement convicts her of perpetrating a fraud upon him but for that she offers the explanation that the man she was suing advised her to do so. She explains the delay of three years before bringing suit by saying that she had great confidence in defendant, though he had not only welched on his marriage compact with her but upon a promise to remarry. When confronted with the fact that she had her sister pay $100.00 to the real estate agent under a contract to purchase the property she now claims by virtue of the alleged trust, that was only to ''stall'' until she could file

the bill. Such adeptness at explaining is convincing proof of a versatile mind, not that complainant has been defrauded. A person who admits defrauding her attorney might not shrink from setting up a spurious claim to another's property.

She offers as corroborating proof the testimony of her sister and the sister's husband that defendant made the loose statement that she was to have the house as a home. They do not say that defendant admitted that he was to give her the house for dismissing the breach of promise suit. In fact one of them says the statement was made before the divorce while the witness was attempting to effect a reconciliation and that defendant then said complainant was to have the house not for life or in fee but as long as she was single. These witnesses by reason of the fact that they are now living with complainant in the property are not entirely disinterested. Complainant's other witness, the estranged and now divorced second wife of defendant, says about a month before she and defendant were married defendant told her he intended to buy the property and give it to complainant. This witness is to some extent impeached by her admission that she had filed a bill in which she swore that her chill, conceived while she was married to another man, was defendant's child and that she later filed an amended bill and made the contrary allegation that she conceived the child by her former husband. Defendant denies making such a statement and it seems rather unnatural that he would have told his prospective wife of his plans to buy another woman a house and give it to her, though it is, of course, conceivable that he might have done so.

Complainant's claim is not only not supported by any writing but is directly contradicted by the plain terms

of the release and by the recorded title standing in the name of George Hoffner, Jr., for nearly three years.

If such evidence is sufficient to establish a trust in the face of the written release and settlement and contrary to the terms of the deed, no title would be safe. No better illustration than this of the wisdom and necessity of requiring proof of the highest character before engrafting a trust upon the title of another's property could be found.

It results that the decree will be reversed and the suit dismissed.  Costs will be adjudged against complainant.