JEANIE DIANNE (WHITE) )
HANNAH, )
                      )
       Plaintiff/Appellee, )          Appeal No.
                      )          01-A-01-9712-CV-00694
v. )
                      )          Sumner Circuit
GARY R. HANNAH; CARL ED )          No.  17178-C
HANNAH and wife, DIANE )
CARROLL HANNAH, )
                      )
       Defendants/Appellants. )
                      )

**FILED**

**July 22, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

MICHAEL W. EDWARDS
177 East Main Street
Hendersonville, Tennessee  37075
     ATTORNEY FOR PLAINTIFF/APPELLEE


ROBERT G. INGRUM
Phillips & Ingrum
117 East Main Street
Gallatin, Tennessee  37066
     ATTORNEY FOR DEFENDANTS/APPELLANTS

REVERSED IN PART,
MODIFIED IN PART,
and REMANDED.

WILLIAM B. CAIN, JUDGE

# <u>OPINION</u>

Defendant/husband and his father and stepmother appeal a divorce decree on issues of property rights, personal property values and amount of child support.

Plaintiff, Jeanie Dianne (White) Hannah and defendant, Gary Ray Hannah were married May 18, 1991. Two children were born to the marriage, to-wit: Chelsea Alexandria Hannah born June 26, 1990, and Collin Ray Hannah born January 24, 1994. Defendant had one child by a previous marriage and at the time of the proceedings herein was paying $75.00 per week for support of this child under proper court order.

Defendants Carl Ed Hannah and wife, Diane Carroll Hannah are the father and stepmother of Gary Ray Hannah.

On August 6, 1992, Carl Ed Hannah and wife, Diane Carroll Hannah purchased, by warranty deed, property located at 121 Mockingbird Hill Road in Hendersonville, Tennessee. Simultaneously, they executed a promissory note and deed of trust encumbering the property in the amount of $30,000.00 to First American National Bank. A mobile home was located on the property and included within the deed and the deed of trust. Monthly payments on the note to the bank were $638.76 for a period of five years.

This property was purchased for use as a home by Jeanie Dianne Hannah, Gary Ray Hannah and their children but title to the property was held by Carl Ed Hannah and Diane Carroll Hannah subject to the deed of trust to First American National Bank. Neither Gary Ray Hannah nor Jeanie Dianne Hannah were in any way obligated on the debt to the bank.

An oral agreement was made among all parties that Gary Ray Hannah, Jeanie Dianne Hannah and their children would live in the mobile home, make the monthly payments to First American National Bank, pay insurance and

property taxes and otherwise generally maintain the property. They would pay no rent and if Gary Ray Hannah and Jeanie Dianne Hannah made all payments sufficient to discharge the mortgage indebtedness, Carl Ed Hannah and Diane Carroll Hannah would then deed the property, in fee simple, to them.

First payment on the deed of trust note was due September 15, 1992 and a like payment due monthly thereafter, through and including final payment, due August 15, 1997.

Gary and Jeanie Hannah moved into the property and made certain of the payments to the bank until November 1994 when these parties separated for the first time and simply stopped making the mortgage payments. By April 1995 with Gary and Jeanie Hannah having failed and refused to make payments to the bank and the note being five payments overdue, Carl Ed Hannah and Diane Carroll Hannah paid off the loan balance to the bank in the amount of $16,120.07.

After the payoff of the bank by Carl Ed and Diane Hannah, Gary and Jeanie Hannah reconciled and moved back into the Mockingbird Hill Road property and lived rent free with neither of them recognizing any obligation to pay anything to Carl Ed and Diane Hannah. Gary and Jeanie separated in 1997 and suit for divorce was filed by Jeanie Hannah on July 24, 1997.

No issue is made on appeal as to the action of the trial court in granting the divorce to Jeanie Dianne Hannah nor to the action of the trial court vesting custody of the two minor children in her.

The first issue on appeal involves the disposition of the property at 121 Mockingbird Hill Road.

In the final decree the trial court held in part:
(2) The Court finds the following marital estate:

(a) <u>REAL ESTATE</u>: The house and lot located at 121 Mockingbird Hill Road, Hendersonville, Sumner County,

Tennessee, has a fair market value of Sixty-four Thousand and 00/100 Dollars ($64,000.00). This property is titled in the name of the HUSBAND's parents, CARL E. HANNAH and wife, DIANE C. HANNAH, and the Court finds that an agreement was made between the parties that the HUSBAND and WIFE would make the mortgage payments and once the house was paid off, it would be titled and deeded in their names. Without the knowledge of the WIFE, the HUSBAND's parents paid the house off in the amount of Twenty-one Thousand and 00/100 Dollars ($21,000.00). The Court finds that the net equity which constitutes the marital estate is Forty-three Thousand and 00/100 Dollars ($43,000.00).

The Court finds that the best interests of all parties involved in this case would be served in placing the property located at 121 Mockingbird Hill Road, Hendersonville, Sumner County, Tennessee, in the hands of Mahailiah Hughes, Circuit Court Clerk, as special commissioner to sell said property and make the division thereof based on this Court's Final Decree.

Afterwards, as a part of the division of the marital estate, the trial court granted $12,850.00 of the 121 Mockingbird Hill Road equity to the husband and $30,150.00 thereof to the wife.

The evidence in the case strongly preponderates against the action of the trial court. The final judgment does not state the basis for the trial court holding and the evidence does not support either a resulting or constructive trust as asserted on appeal by appellee. It is undisputed that the property at all times belonged to Carl Ed Hannah and Diane Carroll Hannah. An oral agreement between all parties provided bilateral obligations. Carl Ed and Diane Hannah provided the means by which the home was purchased and assumed all obligations to the bank. Gary and Jeanie Hannah agreed to make the mortgage payments, together with paying the taxes and upkeep on the property, during the five year term of the mortgage. Barely two years into the mortgage term Gary and Jeanie Hannah repudiated their oral obligation by failing and refusing to make the mortgage payments. Since they were not obligated to the bank on the mortgage debt the entirety of this obligation fell back on Carl Ed and Diane Hannah. Five months passed with no payments on the mortgage debt and no indication by either Gary or Jeanie Hannah of any intention to make any further

mortgage payments. Faced with this problem and being the sole obligors on the note to the bank, Carl Ed and Diane Hannah paid off the balance of the note to the bank. The trial court found that the payoff at the bank was made without Jeanie Hannah's knowledge. This determination is of no consequence. Jeanie well knew that both she and Gary Hannah had breached the contract with Carl Ed and Diane Hannah by refusing to pay the mortgage installments after November 1994. Under this analysis, the payments made by Gary and Jeanie amount to mere rental payments, justly compensating Gary's parents for Gary and Jeanie's use of the property.

After their reconciliation, following the payoff of the mortgage indebtedness, Gary and Jeanie Hannah lived rent free on the property purchased by Carl Ed and Diane Hannah. As such, Gary and Jeanie became no more than gratuitous tenants of sufferance.

This charitable forbearance by Carl Ed and Diane Hannah is the antithesis of the fraud, abuse of confidence, unconscionable conduct, artifice or concealment necessary to justify a constructive trust. *Rowlett v. Guthrie*, 867 S.W.2d 732 (Tenn.Ct.App.1993).

Since Gary and Jeanie Hannah abandoned and disavowed their obligation to pay the mortgage payments as they became due and thus left their benefactors to pay off the mortgage, the most they could hope for would be a resulting trust pro tanto as to the amount of money they had actually paid.

> [7] Payment of a part of the consideration, under such circumstances that if the whole were paid a trust would result, creates a trust *pro tanto*, if the amount paid be definite or constitute an aliquot part of the whole consideration. But a general contribution is not sufficient to raise a resulting trust. 2 Lawrence on Eq.Jur. (1929 ed.) sec. 571; Pomeroy's Eq.Jur. (5th ed.), sec. 1038, pp. 77-78; Perkins v. Cheairs, 61 Tenn. 194, 200-202; Haggard v. Benson, 3 Tenn.Ch. (Cooper's), 263, 278; Botsford v. Burr, 1817, 2 Johns.Ch.,N.Y., 405, 410; Socol v. King, 36 Cal.2d 342, 223 P.2d 627; Annotation, 42 A.L.R. 52.

> [8] To set up a resulting trust by parol requires a

greater degree of proof than a mere preponderance of the evidence. The evidence must be clear and convincing. Hoffner v. Hoffner, 32 Tenn.App. 98, 104, 221 S.W.2d 907; Hunt v. Hunt, 169 Tenn. 1, 9, 80 S.W.2d 666; Walker v. Walker, supra; see other Tennessee cases cited in Annotation, 23 A.L.R. 1513-14.

. . .

. . . Referring to parol evidence to establish a resulting trust, Pomeroy says:

"It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt. Where the payment of a part only is claimed, the evidence must show, in the same clear manner, *the exact portion of the whole price which was paid.*" (Italics supplied.) Pomeroy's Eq.Jur. (5th ed.), sec. 1040, pp. 82-84.

*Greene v. Greene*, 38 Tenn. App. 238, 249-50, 272 S.W.2d 483, 488 (1954).

The proof in the case at bar does not establish any definite amount paid by Gary and Jeanie Hannah, and considered as a whole, the evidence falls far short of the clear, strong, unequivocal and unmistakable testimony necessary to establish a resulting trust *pro tanto*.

Indeed, such seems to have been the conclusion of the trial court at the end of the trial:

MR. INGRUM: Now does Your honor want to hear any proof from Mr. and Mrs. Hannah concerning their ownership rights and what they've paid, or have you already decided --

THE COURT: No. They own the property.

The property at 121 Mockingbird Hill Road belongs in fee simple to Carl Ed Hannah and wife, Diane Carroll Hannah. As such neither the property nor the fair market rents paid for its use are to be considered as marital property. The decision of the trial court holding otherwise is reversed.

Appellant next takes issue with the amount of child support ordered below. The court found that the earning capacity of the appellant was far in excess of the actual income reported by him. The evidence does not preponderate against this finding of fact. This court, however, does take issue with the calculation method the trial court used. In ordering the support obligation, the court below apparently considered a $2,280.96 net income for an individual earning $3,000 gross. The court used this net figure in calculating the support obligation of the appellant. Although the proof below showed that Gary Ray Hannah was "self-employed," the trial judge apparently imputed the earnings $3,000 wages as those of an employed individual. However, this court finds that in calculating the appellant's support obligation, the trial court failed to consider appellant's prior support obligation of $325 per month for the child of a prior marriage per the Child Support Guidelines. ***Tenn. Comp. R. & Regs. r. 1240-2-4-.03***(1994). By subtracting that $325 from the monthly gross, we arrive at the appropriate net income of $1,955.96. This figure corresponds more closely with $627 per month child support, payable at $146.00 per week through the Registry of the Circuit Court Clerk's Office, plus an additional 5% commission for a total of $153.30 per week.

Appellant complains of the allocation and valuation of marital property made by the trial court.

First of all, since this court reverses the action of the trial court allocating the property at 121 Mockingbird Hill Road as marital property, there is no division thereof to be made. The valuation of the 1978 Ski Supreme boat was valued by both parties at $2,500.00 but the value in the final decree is $5,000.00. The value of this item is set at $2,500.00 and same is awarded to appellant. The value of the Kabota lawn mower is established by the testimony to be $600.00 but is valued at $3,500.00 in the final decree. The value thereof is $600.00 and same is awarded to appellant. The value of the GMC Jimmy is not established by the record but in the decree is valued at $2,000.00. Regardless of its value same is awarded to appellee. The 1972 Nova is valued by the appellee between $4,500.00 and $5,500.00 and found by the trial court to have a value of $5,500.00. We award the 1972 Nova, whatever its value, to Jeanie

Hannah. The tools of the appellant are valued by the appellant at $1,000.00 and by the appellee at $8,000.00 but found by the decree to have a $3,500.00 value. The tools are valued at $3,500.00 and are awarded to the appellant.

All other property of any kind or character, regardless of value, is awarded to appellee.

It is necessary to comment briefly on the procedure used in the trial court bringing about the final decree. At the conclusion of the hearing the trial judge instructed both counsel to submit their proposals separately to the court without exchanging same. The result is that the trial court adopted the decree submitted by counsel for the appellee, and the first time that counsel for the appellant was made aware of the contents thereof, was when he received a copy of the final decree. A motion to alter or amend was thereafter denied by the trial court. In many respects the final decree is simply contrary to the evidence in the case. This is a procedure which should not be encouraged.

The judgment of the trial court is reversed in part, modified in part, and remanded. Costs on appeal are assessed equally against the parties.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE

-8-