GREENWOOD *v.* MAXEY.

(*Jackson,* April Term, 1950.)

Opinion filed June 9, 1950.

W. G. CAVETT, of Memphis, for complainant.

HANOVER & HANOVER, of Memphis, for defendant.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Ernest Greenwood instituted this suit for the purpose of establishing a resulting trust in his favor in lots 201 and 202 on McKellar Street in Memphis. The record title to the lots at that time was in his step-son, the de-

fendant, Henry Maxey. He amended his bill to recover reasonable rent for the use and occupation by Maxey since 1941 of premises identified as No. 205 McKellar Street, which admittedly is the property of the complainant, and upon which Maxey has paid no rent.

Complainant's testimony is that in 1925 he entered into an agreement with his wife whereby they would purchase lots No. 201 and 202 and take title as tenants by the entirety. He says that he furnished all the money for the payment of these two lots and that he paid for the building of the three room residence on lot 202 in 1926. He and his wife lived there from that date until her death in 1947. He still lives there.

In 1925 Cora Greenwood, the wife of the complainant, entered into a contract with the Riverside Sub-Division Company to buy lot 201 for a consideration of $500.00 payable at the rate of $2.50 per week. At the same time an identical agreement was executed by the Riverside Sub-Division Company for the transfer of lot 202 to the defendant, Henry Maxey, upon completion of payment of the same consideration on the same terms. Maxey's name was signed to this contract by his mother.

In 1937 the contract as to lot 202 was assigned to defendant's mother with the name of the defendant being signed by some clerk in this realty company. Maxey says this was at his direction because he was contemplating marriage.

In 1943 complainant's wife made a will devising these two lots to her two aged sisters in Mississippi. After she died in 1947 this will was probated. At that time each of the two contracts lacked a small amount of being paid out. Defendant paid this balance in installments and thereupon in 1948 the realty company executed and

delivered, presumably to him, a deed conveying this property to his mother, the complainant's wife. She was then dead. This deed was put of record.

Defendant then had a deed prepared in Memphis whereby his two Mississippi aunts for a consideration of $10.00 conveyed him these two lots. He took this deed to Mississippi and they signed it, the consideration being, according to Maxey, clothes costing $20.00 in addition to the aforementioned $10.00.

Complainant's testimony is that he did not know until after the death of his wife in 1947 that the contracts with reference to these lots had not been taken in the name of himself and his wife as tenants by the entirety. He says that he paid all the purchase price on each lot except the aforementioned small balance, the money being delivered to the realty company by his wife.

Complainant also testifies that he paid for the building of the residence on lot 202. Four disinterested witnesses testified with reference to his payment for the lumber with which was built in 1926 the house on that lot. One of these witnesses testified as to the hauling of lumber for him to this lot at that time; another, as to being paid $140.00 for dressing the lumber that went into this house; two others, that they worked at that time at the same lumber company at which the complainant was working and that they know he bought and paid for lumber there at that time.

It is upon all of the foregoing evidence that the complainant insists that these lots are his by way of a resulting trust.

Complainant had demanded a jury to try the issues in this case. It was so heard upon oral evidence. At the close of complainant's proof, defendant moved that

the issues be withdrawn from the jury. The Chancellor overruled this motion with the statement that:

". . . it is his testimony he paid for the land and he has plenty of proof to substantiate that. He is corroborated on that. There is evidence that he did build the house on the lot".

The testimony of defendant Maxey is that the contract with reference to lot 202 was made in his name pursuant to an understanding had with his mother; that he paid for lot #202, and he and his mother paid for the building of the house. He was in Mississippi from 1922 to 1931 and made only three visits home during that time, and says that he sent his mother money five times. He offers no evidence other than his own testimony together with the documentary evidence herinabove related. He says that complainant knew all about that documentary evidence with the exception of the deed from the realty company to the mother after her death and the deed from his two Mississippi aunts to him, and that defendant frequently by oral remarks to defendant and his mother recognized him, the defendant, as the owner of lot 202, and the mother as the owner of the lot 201.

The monthly payments on these lots were made with fairly reasonable regularity, with several payments being made at one time on occasions to catch up past due installments.

When the Chancellor withdrew the issues from the jury on defendant's motion at the close of all the evidence he told the jury that he was doing so because there was no competent testimony to support the allegations as to a resulting trust, but that if he should be mistaken as to this, the testimony was not clear, cogent and convincing; hence, should not be submitted to the jury.

It was the opinion of the Chancellor that the testimony of the complainant as to the aforementioned transaction with his wife was incompetent under Code, Section 9777 prohibiting husband or wife from testifying in any civil action as to any matter that occurred between them by reason of the marital relation. It was upon this basis, no doubt, that the Chancellor in withdrawing the issues from the jury concluded that no competent evidence supported complainant's claim of a resulting trust.

The Court of Appeals agreed with the Chancellor as to lot 201, the equitable title to which had always been in the complainant's wife under the aforementioned contract. It was of the opinion that Code, Section 9777 did not apply to lot 202 since the equitable title to that property was taken in the name of the defendant, Maxey, a stranger, legally, to the complainant; that if the jury elected to believe the testimony introduced in behalf of complainant Greenwood, then the evidence in his behalf was clear, cogent and convincing as to the creation of a trust, constructive or resulting in complainant's favor. That Court did not think it mattered which of these two trusts it might be in law. It, therefore, was of the opinion that the Chancellor should have submitted the issue as to lot 202 to the jury. The decree of the Chancellor was accordingly modified and the cause remanded for a new trial upon that issue.

That part of complainant's bill for the recovery of a judgment for rent from defendant for his use and occupancy since 1941 of premises No. 205 was rejected by the Chancellor upon finding that complainant's "testimony in rebuttal shows that he did not expect to collect rent, certainly up to the time of his wife's death". The Court of Appeals concurred in that finding of the Chan-

cellor with the statement that "complainant's own testimony showed that . . . he did not expect to be paid rent. That is to say simply that there was no evidence to submit to the jury".

Both complainant and defendant filed petitions for certiorari, each complaining of such holdings of the decree of the Court of Appeals as are adverse to his contention. Both writs were granted, supplemental briefs have been filed and the contentions orally presented.

██ It is the contention of Greenwood that there was material evidence to support his insistence that Maxey did not enter upon the occupation of premises No. 205 with an understanding that he was not to pay any rent; that, therefore, the Court of Appeals should have held that the Chancellor erred in withdrawing this issue from the jury. If the record is in condition to consider this insistence upon its merits, then the concurrent finding of the Chancellor and the Court of Appeals to the effect that Maxey did enter under an agreement that he was not to pay rent is not controlling, provided there is material evidence to support the contrary contention of Greenwood. This, because "if there is any material evidence to sustain the theory of the (complainant) submitting issues of fact, these issues must be submitted to the jury". *First National Bank of Ripley* v. *Barbee*, 150 Tenn. 355, 365, 265 S. W. 371, 373.

At the very threshold of our consideration of the insistence made with reference to this rent question, we are confronted with the necessity of first ascertaining whether Maxey's insistence that he entered upon his occupation of these premises under an agreement not to pay rent was regarded as a question for submission to the jury. If not, then the finding of the Chancellor con-

curred in by the Court of Appeals and supported by material evidence is conclusive, and forecloses consideration of the insistence that there is material evidence to support Greenwood's contrary contention. The answer to this preliminary question is by no means free of doubt, the condition of the record being what it is.

Greenwood demanded a jury to try the issues of fact. It is the duty of the party demanding a jury to submit proper issues. *Ragsdale & Mabry* v. *Gossett*, 70 Tenn. 729, 740. The issue presented by complainant for submission to the jury on the rent question was whether (a) Maxey had actually paid any rent and (b) what is a reasonable rent. That issue is immaterial if the agreement was that Maxey might enter without the payment of rent. The issue filed by Greenwood for submission to the jury was filed before Maxey filed his amended answer averring that the agreement was that he should occupy the premises without the payment of rent so long as he kept up the premises. The record does not disclose that Greenwood thereafter presented any further issue on this question for submission to the jury. Yet, the decree of the Chancellor recites that the defendant's (no doubt meaning complainant's) demand that the issues of fact be tried by a jury "was granted". Certainly, the answer of Maxey averring that he occupied the premises, but under an agreement that he was not to pay any rent except upon the condition stated, made a material issue of fact.

In dealing with the insistences as to the rent question, both the Chancellor and the Court of Appeals seem to have disposed of the question not upon the idea that it was not presented for jury consideration, but upon the idea that all the material evidence supports Maxey's insist-

ence that he entered under an agreement not to pay rent. The briefs of both litigants seem to likewise so regard the matter in presenting their contrary ideas as to whether there was any material evidence to support Greenwood's contention on the rent question.

Such being the condition of the record, it would seem inequitable to dispose of Greenwood's contention with reference to the rent on a basis that he did not present the proper issue for submission to the jury. The case seems to have been treated by all parties under the assumption that he did properly present it, and the decree in substance so recites in the manner hereinabove stated. We, therefore, conclude to treat the determinative issue as to the rent question as being one that was regarded by the Court and litigants as having been properly presented for submission to the jury.

The conclusion just stated reduces the problem upon the rent question then to a determination of whether there was any material evidence to support Greenwood's insistence that Maxey did not occupy these premises under an agreement not to pay rent. If there is any such material evidence, then the holding of the Chancellor and the Court of Appeals on that issue must be reversed.

In response to the allegations of the bill seeking a recovery of rent for the use and occupancy of the property Maxey's answer avers that he moved into the house "with the understanding and definite agreement that as long as the defendant occupied the house and took care of the place he was not to pay any rent". He also testified "suppose to keep the house up, keep the fences up" and "things like that" and says that he did this. All this, in effect, is an admission that he was to pay rent, if he did not keep up the place.

Greenwood's testimony is that he valued the house at $10.00 per month " I couldn't more than keep it up for that and that is what I was looking for"—it was "for rent, I expected the house to be kept up"—his mother told him "he could move in there and pay $10.00 per month rent". Greenwood further testified that Maxey had done nothing in the way of keeping the premises up , "nothing but run up a water bill".

Nothing else appearing the mere occupancy of the property implies a contract to pay rent. Compare *Loague & Fisher* v. *City of Memphis*, 75 Tenn. 67, 69. If the above reviewed testimony of Greenwood is accepted as the truth it necessarily follows that he did not permit Maxey to occupy the premises without an intent to charge. It is clear from his testimony that he expected to collect enough to keep the property up and that the amount calculated as necessary for that purpose was $10.00, and that Maxey's mother told him "he could move in and pay $10.00 per month rent". Maxey partially corroborates this by the averment of his bill, and his testimony that he was not to pay any rent so long as he took care of the place. Greenwood says that he did nothing in that respect.

We think there was material evidence to support the insistence of the respondent with reference to rent. Hence, that the Chancellor made a mistake in withdrawing this issue from the jury, and that the Court of Appeals erred in not so holding.

Considering next, the Chancellor's holding that there was no evidence to sustain complainant's insistence that there existed a resulting trust on the aforesaid lot 201 in favor of the complainant, we think that holding was

correct. Therefore, it was properly affirmed by the Court of Appeals.

 Complainant's wife was vested with the equitable title to this property subject to the payment of the purchase money. Any payments of that purchase money by the complainant, her husband, are presumed in law to have been intended as a gift from him, the husband, to her, the wife. *Ferguson* v. *Booth*, 128 Tenn. 259, 160 S. W. 67, 51 L. R. A., N. S., 343, to which reference is made by the opinion of the Court of Appeals. It is proposed in this case to rebut that presumption by the testimony of the husband to the effect that he and his wife entered into an agreement that the title would be taken in the name of both as tenants by the entirety. The Chancellor and the Court of Appeals correctly held that such rebutting testimony is incompetent under Code, Section 9777 providing that in "civil actions . . . neither husband nor wife shall testify as to any matter that occurred between them by virtue of or in consequence of the marital relation".

Maxey attacks the Court of Appeals' opinion to the effect that the Chancellor erred in withdrawing from the jury the issue as to whether a trust resulted in favor of Greenwood on lot 202.

The Court of Appeals first took notice of the fact that title to lot 202 was in Maxey, a stranger, legally speaking, to Greenwood, and then observed that if Greenwood furnished the money for the payment of that house and lot, title to which was taken in this stranger's name, a trust would result in favor of Greenwood. The Chancellor's holding is not contrary to that legal conclusion. He withdrew the issue from the jury, however, because, when all the evidence was in, he did not consider the

evidence to establish such trust as clear and convincing.

The Court of Appeals said that if the evidence in behalf of Greenwood to the effect that Greenwood furnished the money to pay for the lot and for the house is believed by the jury, "then there is clear, cogent and convincing evidence on which a trust for his benefit should be decreed". Accordingly, the Court of Appeals thought it was a question for the jury.

As we understand it, the Chancellor was of the opinion that he had the authority to withdraw the issue from the jury if he was not satisfied *from all the testimony in the case* that the evidence establishing the trust was clear and convincing. That is the position taken here in behalf of Maxey. *Hunt* v. *Hunt*, 169 Tenn. 1, 80 S. W. (2d) 666, seems to be principally relied upon in favor of that insistence.

In the Hunt case it was said that "a parol trust is not a proper case in which to submit to a jury the issue of the creation of the trust unless there is clear and convincing evidence in favor of the proponent", 169 Tenn. at page 11, 80 S. W. (2d) at page 669, and that "obviously the question to be determined here is whether there was clear and convincing evidence to justify the jury's affirmative response to the above issue". 169 Tenn. at page 11, 80 S. W. (2d) at page 670.

We do not construe the language of the Hunt case above quoted to mean that if there is clear and convincing evidence to justify the jury's affirmative response to the issue as to the creation of a parol trust, it must not be submitted to the jury if there is in the case the testimony of other witnesses which, if true, contradicts this testimony which is otherwise clear and convincing. That creates a situation merely as to the

credibility of witnesses. Yet, that is in substance the effect of the holding of the Chancellor and the insistence of Maxey here.

We think as to the evidence, the question of fact to establish a parol trust is governed by the same rule in a jury case as it is on a question of fact on any other subject in a jury case, except that with reference to the existence of a parol trust there must be submitted evidence which is clear and convincing. Otherwise, it is not proper to submit the issue to the jury. The fact that this clear and convincing evidence may be contradicted by the testimony of other witnesses is not sufficient to withdraw the issue from the jury. That constitutes the Chancellor the judge in the first instance of the credibility of the witnesses, a function which at that time is the province of the jury.

So, the question here is reduced to the proposition of whether there was submitted in behalf of Greenwood clear and convincing competent evidence of the existence of a trust in his favor on lot 202.

If the testimony of the four disinterested witnesses with reference to Greenwood's purchase and payment for the lumber etc., and of its delivery to that lot is believed by the jury, then the conclusion is inescapable that Greenwood paid for the building of this house, the equitable title to which at that time stood in the name of this legal stranger, the defendant Maxey. As a corollary it is unreasonable to conclude that any one would knowingly expend his money in the building of a residence upon property title to which such person knew to be in the name of a stranger.

Greenwood testified that he built this house under the belief that title was in him and his wife as tenants

by the entirety. The testimony of the witnesses above referred to with reference to the lumber, if believed, is *ipso facto* corroborative of that testimony.

Greenwood likewise testified that he paid the purchase price of this lot under the same belief. There is no insistence in this record that his wife paid any of the purchase price. Maxey's testimony is that he, Maxey, paid the purchase price. So as the question is presented here on that point it is a matter of credibility between these two witnesses as to which of them paid for this lot. Further corroboration of Greenwood on the point might very well be found in the light of Maxey's testimony that from 1922 to 1931 he was not in Tennessee and that he sent unspecified amounts of money to his mother only on five unfixed times during that interval, though the monthly payments on this lot were made with fair regularity.

We think the evidence submitted in behalf of Greenwood to the effect that he paid for this lot and for the house built thereon, and all under the belief that the title was in him and his wife as tenants by the entirety, is clear and convincing if it is true. As this record comes to us it is true unless a jury, which must judge in the first instance the credibility of the witnesses, elects to reject the testimony of Greenwood and of the four disinterested witnesses who testified in his behalf and accepted the testimony of Maxey.

As we understand it, it is conceded that the testimony submitted in behalf of Greenwood, if true and if competent, and if clear and convincing, (as we have held it is) is sufficient to establish a trust upon this lot in his favor. So we will not deal with that.

The final question then is whether Greenwood's testimony was incompetent because of Code Section 9777 prohibiting husband or wife from testifying as to matters occurring between them by reason of the marital relation.

Greenwood's testimony to the effect that (1) he paid for the lot and for the house and that he believed the title was in him and his wife as tenants by the entirety at the time is a statement of an independent fact. The admissibility of that testimony does not violate Code Section 9777. *Walters* v. *Staton,* 21 Tenn. App. 401, 111 S. W. 2d 381.

The conclusion of this Court is that the Court of Appeals correctly held the Chancellor to have been in error in withdrawing the issue as to the creation of a trust in favor of complainant on lot 202, and in remanding the case for trial on that point.

The decree of the Court of Appeals will be modified so as to hold that the Chancellor erred in withdrawing from the jury the issue as to whether Maxey entered the occupation of lot 205 on an agreement not to pay any rent, and in remanding the cause, it will likewise be remanded for trial of that issue by the jury. The Court of Appeals' decree is further modified so as to divide the costs of appeal between Greenwood and Maxey. As so modified the decree of the Court of Appeals is affirmed and remanded.

All concur.