# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 8, 2010 Session

## RICHARD SWECKER, et al., v. STEVEN MICHAEL SWECKER, et al., and, DINAH SLUDER, et al., IN RE: ESTATE OF JOSEPH JAMES SWECKER, STEVEN SWECKER, et al., v. RICHARD ALLEN SWECKER

**Appeal from the Chancery Court for Greene County**
**No. 20080307      Hon. Thomas R. Frierson, II., Chancellor**

---

**No. E2010-00046-COA-R3-CV - FILED JANUARY 26, 2011**

---

Plaintiffs brought this action to establish a partnership with the deceased against the estate's personal representative and others. Defendants answered, denying the allegation that a partnership existed, and filed a counter-complaint, asserting the estate should be reimbursed for plaintiffs' mismanagement of the farm, and for monies the plaintiffs removed from the estate's bank account. Following an evidentiary hearing, the Trial Court held that deceased and plaintiff had entered into a partnership and that the partnership would be wound up by the Court and the partnership assets distributed. Also, the Trial Court held that plaintiffs would be required to pay rent on the house they occupied on the farm for several years. On appeal, we affirm the finding that a partnership existed, but reverse the Trial Court's holding that plaintiffs owed the estate rent for occupancy of the house on the farm. We remand, with directions to the Court to wind up the partnership.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

Denise Terry Stapleton, Morristown, Tennessee, and W. Lewis Jenkins, Dyersburg, Tennessee, for the appellants, Steven Michael Swecker and Joseph Grant Swecker.

Kenneth Clark Hood, Greeneville, Tennessee, for the appellees, Richard Allen Swecker and

Maria Swecker.

**OPINION**

This case originated with the filing of a Complaint by Richard Swecker and Maria Swecker, against defendants Steven Michael Swecker and Joseph Grant Swecker, personal representatives of the Estate of Joseph James Swecker.

Plaintiffs alleged that decedent operated a dairy with plaintiff Richard Swecker for several years prior to his death on June 25, 2008. Plaintiffs alleged that the dairy was operated on a 200 acre tract of land titled to Joseph James Swecker, and that they had about 260 head of cattle which were registered jointly to Richard Swecker and Joseph Swecker. Plaintiffs alleged that the checks for the milk were issued jointly to Richard and Joseph while Joseph was living, and were deposited into a joint bank account in both names. Plaintiffs asked the Court to declare that a partnership existed in the dairy operation between Richard and Joseph Swecker.

Plaintiffs also sought distribution of the partnership profits and assets, alleging that while the partnership was dissolved upon decedent's death, Richard had continued to operate the dairy with the assent of the defendants, and defendants had collected all the profits ($150,000) and had not provided him with a share, nor paid him for his expenses. Plaintiffs also alleged that they had been living in a home located on the 200 acre property, which they had significantly remodeled and refurbished with the knowledge and consent of decedent. They claimed that decedent told them he would deed the house and real estate to them, but never did. Plaintiffs alleged that they had improved the value of the home by $50,000, and that it would be unjust to allow the estate to retain the improvements without paying for them.

Defendants answered, alleging that Richard was merely an employee of the dairy, and that no partnership existed. They stated that the house plaintiffs lived in was actually improved by their sister and brother-in-law, Dinah and Danny Sluder, and that plaintiffs did not pay for the improvements to the house. Defendants stated that they had no information regarding plaintiffs' alleged improvements to the dairy.

The personal representatives filed a Counter Complaint, asserting that the estate should be reimbursed for Richard's mismanagement of the farm, and alleged that the farm was nearly $100,000 in the red due to Richard's failure to properly maintain the farm equipment, failure to properly prepare the fields for crops that would provide food for the

cattle, failure to properly care for the cattle, etc. The personal representatives also alleged that plaintiffs should be ordered to return the $38,000 they took from the estate's bank account, and should be made to pay rent for the home they were living in.

The Court entered an Order, holding that the cattle and dairy equipment would not be sold pending trial, and that the personal representatives would continue to operate the dairy. The Court ordered that Richard would not interfere with the dairy operation, but that he was entitled to have information concerning the same.

The trial was held on October 7, 2009 and numerous witnesses testified. Following the trial, the Court entered a Memorandum Opinion on November 30, 2009, finding that decedent purchased the farm in 1959, and conducted farming operations and a dairy business. The Court found that Richard began to help his father in the dairy in the mid 1970's, and that he and Maria married in 1984 and moved into the home on the property in 1986. The Court found that in 1997, Richard assumed greater responsibilities with respect to the dairy, and that he and decedent established a joint bank account for the purposes of managing the income and expenses of the farming operations. The Court found that plaintiffs also made valuable improvements to the home in which they were living.

The Court found that the evidence was clear and convincing that "this association of father and son to carry on as co-owners of a business for profit resulted in the formation of a partnership", because they had a joint bank account, they had the checks for milk issued in both names, and they had the cattle registered in both names. The Court found that the partnership was dissolved upon decedent's death, and that the parties should proceed with winding up its business, under the Court's supervision.

The Court found that when plaintiffs moved into the home on decedent's property in 1986, it was in need of repair, and that plaintiffs made valuable improvements to the property. The Court observed that a witness testified that the plaintiffs' improvements had increased the home's value by about $47,000. The Court found that plaintiffs should be awarded the cost of those renovations, of $32,776.49.

Regarding the cattle, the Court found that those cattle registered to Richard's daughters were not assets of the estate. The Court found that the cattle registered to decedent and Richard jointly were partnership assets, and they should be sold and 50% of the proceeds distributed to the estate, and 50% distributed to Richard. The Court found certain items of farm equipment to be Richard's, and listed those. The Court found that the remainder of the items were partnership assets which would be sold and the proceeds divided between Richard and the estate. Regarding the real property, the Court found that it would be to everyone's best interest to sell it as a whole tract and then divide the proceeds among

the beneficiaries. The Court found that the personal representatives had not proven their claim that Richard had mismanaged the dairy.

The Court found that the joint bank account was a partnership asset, and that any funds remaining in it upon decedent's death should have first been applied to partnership debts, and the remainder split between Richard and the estate. The Court thus ordered that Richard should reimburse the estate for one-half of the amount he had taken from the account, or $19,000. The Court also found that Richard owed the estate for the fair rental value of the home he had been living in, for 88 months. The Court found, however, that the personal representatives had not proven their claim of contempt as they failed to show that Richard intentionally blocked their access to the barn. Judgment was entered accordingly, and the personal representatives have appealed.

The issues presented are:

1.      Whether the record contains clear and convincing evidence of a partnership between Joseph Swecker and Richard Swecker with respect to the dairy?

2.      Whether the Trial Court erred in ordering a distribution of partnership assets (the proceeds of the bank account and the cattle) prior to the winding up of the affairs of the partnership and the payment of all debts and obligations of the partnership under Tenn. Code Ann. §61-1-807?

3.      Whether the Trial Court erred in finding that Richard and Maria owed rent for 88 months since their use of the house was intended to be gratuitous and since there was no competent evidence of the fair rental value?

Appellants argue the Trial Court erred in finding that there was clear and convincing evidence of a partnership between Joe and Richard Swecker. Tenn. Code Ann. §61-1-202 defines a "partnership" as "an association of two (2) or more persons to carry on as co-owners of a business for profit". As this Court has previously explained:

A partnership can only be created pursuant to a contract of partnership, though such an agreement may be either express or implied. To determine whether a partnership exists, courts must ascertain the intention of the parties. In the absence of a written agreement, the requisite intention is that which is deducible from the parties' actions. The parties need only intend "to do the things which constitute a partnership." A partnership results if the parties "place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them." It is not necessary that the parties intend to actually form a partnership or even that they know the legal

-4-

result of their actions is to create a partnership. Accordingly, the terminology used by the parties to describe their business relationship is of little import.

The determination of whether a partnership exists must be made "upon consideration of all relevant facts, actions, and conduct of the parties," and the burden of proof rests on the party seeking to establish the existence of a partnership. "Generally, what will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact."

*Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn.Ct. App. 2001)(citations omitted).

The Supreme Court has held, "it is not essential that the parties actually intend to become partners." *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). Rather, it is "the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Id.* It is unnecessary for the parties to have an understanding of the legal effect of their acts. *Id.*

As the Trial Court found, in or around 1997, Joe Swecker brought his son Richard into his dairy business on a full-time basis, allowing him to manage all aspects of the dairy, including feeding, breeding, milking, sowing crops, taking care of equipment and repairs, negotiating a new milk buyer, paying bills, ordering, etc. Richard quit his other job and took care of the dairy full-time, with little or no input from his father. Joe and Richard established what Mr. Pickle, the bank representative, testified was a joint bank account, such that after Joe died, Richard became the sole owner. Richard and Joe's names were both on the account, checks, and bank statements, both could write checks, and both had equal access to the funds, according to Mr. Pickle.

At this same time, Joe and Richard also sought to register the herd with the American Jersey Cattle Association in both of their names, which was accomplished. They also sought a new milk buyer, and filled out the paperwork asking the buyer to issue the checks for the milk in both names. Further, while Joe contributed his experience and the assets and ongoing business of the already-established dairy, Richard clearly contributed his labor, skill, and his own personal resources to the dairy operation, by working in it daily, paying bills for the dairy out of his own personal funds and contributing the use of his personal equipment to the dairy. There is no question that the business was operated for profit, and that the profits from the same were placed into a the joint bank account.

-5-

Appellants argue that since Richard was paid a set monthly salary for his work and there was no "sharing of profits" from the partnership, this constitutes evidence that no partnership existed. The fact that he was paid a set monthly amount, however, does not mean that he did not share in the profits from the business. There is simply no proof regarding what this amount was based upon, and the fact that it was a set amount, does not necessarily show that it was not an arrangement that shared the profits between the two men.

Appellants argue that the fact that the milk permit was issued solely to Joe Swecker proves there was no partnership. The evidence showed, however, that these permits were not issued yearly, and that the latest one bore the date of 1995, which was prior to the formation of the partnership as found by the Trial Court. This fact does not disprove that a partnership was formed. Also, the fact that Richard did not file any type of partnership tax return is not conclusive, because, it is "the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid a partnership. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *See Bass*.

In this case, the evidence was undisputed that these men combined their property, labor, skill, experience, and money, and entered into a business relationship for profit. There was no dispute that Richard managed the dairy and took care of its daily operation since 1997. Richard testified to this fact, as did his siblings, the veterinarian, dairy inspector, milk company representative, and former employees. Richard invested his time, labor, and personal money and property into the dairy to help it be profitable. There was no dispute that the bank account was jointly titled and that Richard had equal access to the money. There was no dispute that the milk checks were made payable to both men and deposited into the joint account. There was no dispute that the herd was registered to both men. All of this proof establishes that a partnership was formed between Richard and Joe Swecker, as the Trial Court found. Clear and convincing evidence should eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn. 1992). In this case, the evidence eliminates any serious doubt that a partnership in the dairy existed. We affirm the Trial court's Judgment finding the existence of a partnership.

Appellants argue that even if a partnership existed, the Trial Court erred in distributing some of its assets (the bank account and proceeds from the sale of the herd) before the actual winding up of the partnership and payment of its debts. Tenn. Code Ann. §61-1-807 deals with the winding up of a partnership's business, and states that the partnership assets should

-6-

first be applied to amounts owed to creditors.

A review of the Trial Court's decision, shows the Trial Court clearly intended for the parties to proceed with winding up the partnership business under the Court's supervision, in accordance with the statutory provisions. The Trial Court did order that the herd would be sold in a certain manner, and also that the partnership equipment would be sold as a part of the winding up, and that the net proceeds would be divided between Richard and the estate. The Court intended that any debts of the partnership would be paid first, as a part of the winding up, pursuant to the statute. Regarding the bank account, since Richard had already received the $38,000 that remained in the joint account at the time of Joe's death, the Court ordered that Richard would have to repay one-half of that amount to the estate. Thus, as a part of the winding up, when all of the assets are sold and any legitimate partnership debts are paid, the estate should receive a credit for its share of the bank account, or $19,000. We find the Trial Court did not err in these matters.

Finally, Richard and Maria raised the issue of whether the Trial Court should have made an award of rent to the estate for their use of the house on Joe Swecker's property, since decedent never charged them rent nor expected them to pay the same. They also argue that there was insufficient evidence of the fair market rental value.

The proof was undisputed that Richard and Maria moved into the home on Joe Swecker's property at Joe's request, and that he did not expect them to pay rent and never asked for them to do so. As their brief points out, Tennessee case law states that there is no duty to pay rent when a party is in gratuitous possession of property. *Loague & Fisher v. City of Memphis,* 75 Tenn. 67 (1881). In that case, the plaintiff had two adjoining lots, one of which he rented to the City for a station house; two of the officers who worked at the station house asked plaintiff if they could build a stable on the other lot for their horses, and he agreed, never asking for any rent to be paid for it. *Id*. When he later sought payment of rent for the lot with the stable, his claim was rejected, and the court said, "Nothing, however, can be clearer than that a person cannot demand compensation for what was at the time intended as a gratuitous license." *Id.*

Appellants argue that this holding was later contradicted by the case of *Greenwood v. Maxey*, 231 S.W.2d 315 (Tenn. 1950), wherein the Supreme Court stated, "Nothing else appearing the mere occupancy of the property implies a contract to pay rent", and then contrasted the *Loague* decision. This case, however, is an example of the caveat to the *Greenwood* rule, i.e. "Nothing else appearing". In this case, it is undisputed that Richard and Maria were allowed to live rent-free in the house owned by Richard's father because, as Richard testified, it was of benefit to decedent as well as being of benefit to them. Richard worked with his father daily in the dairy which occupied the same property, and they made

significant improvements to the house as well. There was testimony by multiple witnesses that decedent intended to give the house to Richard and Maria. There was no countervailing proof presented to show that decedent expected that any rent would be paid for their use of the home. Accordingly, we hold that the Trial Court erred in ordering Richard and Maria to pay rent for the house for 88 months.

In sum, the Trial Court's judgment finding that a partnership existed between Richard and decedent is affirmed, and the case is remanded for the Trial Court to supervise the winding up of the partnership. The Trial Court's ruling that appellees should pay rent for the house they occupied on decedent's property is reversed, as decedent gratuitously allowed them to occupy the home.

The cost of the appeal is assessed one-half to the appellants and one-half to the appellees.

_____

HERSCHEL PICKENS FRANKS, P.J.